NATIONAL LABOR RELATIONS BOARD
v. NORTHERN TRUST CO. et al.

No. 44 F 12.

District Court, N. D. Illinois, E. D.

July 3, 1944.

———◆———

Jack G. Evans, of St. Louis, Mo., for National Labor Relations Board.

Jacobson, Nierman & Silbert and Scott, MacLeish & Falk, all of Chicago, Ill., for respondents.

HOLLY, District Judge.

The National Labor Relations Board has applied to this court for an order requiring respondent Northern Trust Company, hereinafter referred to as the Bank, to appear before a trial Examiner of the Board and produce certain books and records described in a certain subpoena duces tecum theretofore issued by the Board and served upon said respondent and requiring the other respondents, officers of the Northern Trust Company to appear and testify in response to such subpoena.

From the application of the Board it appears that on October 19, 1943, the Protective Service Employees of Chicago Local No. 240, Building Service Employees' International Union A. F. L., hereinafter referred to as the Union, filed its petition with the Board charging the Northern Trust Company with refusal to recognize the Union as representative of "all employees working as armed guards except as supervisors and other employees," alleging that the question concerning representa-

tion is a question affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and requesting the Board pursuant to Section 9 (c) of the Act to investigate such controversy and certify to the parties the name or names of the representatives that have been designated or selected by said employees.

It was further alleged in the application of the Board that the documents mentioned in the subpoena are material and necessary to the Board's investigation in that they bear upon the question whether or not the operations of the Bank affect interstate commerce within the meaning of the Act and upon the question of what constitutes the appropriate bargaining unit and whether the Union has a sufficient interest among the employees to warrant the Board in holding an election.

In their answer respondents admit the refusal of the Bank and its officers to obey the subpoena, but assert that neither the bank nor the employees mentioned in the petition filed with the National Labor Relations Board are in any way engaged in commerce as defined in the National Labor Relations Act and the employees do not have any duties or perform any acts which in any way affect such commerce; that the Bank is organized as a banking institution under the laws of the State of Illinois and is a stockholder in the Federal Reserve Bank of Chicago, Illinois, is a duly qualified member of the Federal Reserve System and an insured bank under the permanent plan for the insurance of deposits by the Federal Deposit Insurance Corporation as provided by the Act of Congress; that the National Banking Act provides that no bank subject to the Act shall be subject to any visitorial powers other than such as are authorized by law or vested in the Courts of Justice or such as shall be or shall have been exercised or directed by Congress or by either house thereof or by any committee of Congress duly authorized.

The answer further sets up the provisions of the Act creating the Federal Reserve System concerning examinations to be made of a member bank together with the provisions of the Banking Act of the State of Illinois, Ill.Rev.Stat.1943, c. 16½, § 1 et seq., that banks organized under it shall not be subject to any other visitorial powers than such as are authorized by the Act or such as are vested by the law in the several courts of law and chancery.

In short, it is the position of respondents, first, that the National Labor Relations Act does not apply to the Bank because banking in its nature cannot constitute or affect interstate commerce, second, if it should be held that banking might conceivably affect such commerce it does not necessarily do so, and that the Board is not entitled to an order compelling compliance unless it is shown that the business of respondent's bank affects such commerce and that such showing has not been made here, and, third, that banks are not subject to examination or the exercise of visitorial powers other than those provided for in the National and State laws concerning the organization and control of banking corporations.

■ First: It is contended by respondents that the business of a bank is of such a nature that it does not and cannot constitute interstate commerce nor affect such commerce and therefore a bank and its employees are not subject to the National Labor Relations Act. I cannot agree. The reasoning of the court in Polish National Alliance v. National Labor Relations Board, 64 S.Ct. 1196, brings the ordinary business of a bank, other perhaps than a very small local bank, within the meaning of the term interstate commerce. See also National Labor Relations Board v. Bank of America Nat. Trust & Savings Ass'n, 9 Cir., 130 F.2d 624. It cannot be said as a matter of law that no bank can be engaged in such commerce.

Second: May the Board, in the absence of any showing that the Bank or its employees are engaged in any activities affecting interstate commerce, require the Bank to produce its records for the inspection of the Board in an investigation carried on by it under the provisions of section 9(c) of the National Labor Relations Act or may its officers be compelled to testify in such an investigation?

The National Labor Relations Act, U.S. C.A. Title 29, Sec. 151 et seq. provides (Sec. 8) that it shall be an unfair labor practice for an employer engaged in interstate commerce to refuse to bargain collectively with representatives of his employees subject to the Act. Section 9(c) authorizes the Board, whenever a question affecting commerce arises concerning the representation of employees, to investigate such controversy and certify to the parties in writing the name or names of the representatives that have been designated or se-

lected. In any such investigation the Board is required to provide for an appropriate hearing upon due notice and may take a secret ballot of employees or utilize any other suitable method to ascertain such representative. By Section 11 of the Act it is provided that any member of the Board shall have power to issue subpoenas requiring the attendance and testimony of witnesses and the production of any evidence that relates to any matter under investigation or in question before the Board and, in case of refusal to obey a subpoena, any District Court of the United States within the jurisdiction in which the inquiry is carried on, upon application by the Board, shall have jurisdiction to compel the person to obey the subpoena.

In Myers v. Bethlehem Ship Building Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, the Board was conducting a hearing upon a complaint that the employer was engaged in unfair labor practice. The investigation was being held under the provisions of section 10(a) of the Act forbidding the employer to engage in such practice. The employer sought an injunction to restrain the Board from holding the hearing alleging that its business at the plant in question was not carried on and the products there manufactured were not sold in interstate or foreign commerce and therefore, as to that plant and the employees there, complainant was not subject to the jurisdiction of the Board. But the court held that the Board could carry on the investigation to determine first whether the employer was engaged in interstate commerce and then whether the charge of unfair labor practice was established.

Respondent seeks to distinguish that case from the one at bar by the fact that the investigation there was being carried on under section 10(a) which gives the Board exclusive power to prevent unfair labor practices. But that power is granted only as to practices which affect interstate commerce and Section 10(a) does not give the Board any broader powers with reference to the prevention of unfair labor practices than Section 9(c) gives to the Board to determine the unit appropriate for the purpose of collective bargaining.

In Endicott-Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, the Secretary of Labor was seeking the enforcement of a subpoena issued by her to compel the shoe company to produce certain of its records in an administrative proceeding under the Walsh-Healy Act, 41 U.S.C.A. § 35 et seq. That Act requires a manufacturer furnishing materials or supplies to the Government to stipulate for the payment of certain minimum wages and that no person employed in the manufacture of such material shall be permitted to work in excess of forty hours in any one week. The Secretary was directed to administer the provisions of the Act, to make investigations to determine whether the Act had been or was being violated and to issue orders requiring the attendance of witnesses and the production of evidence under oath. Contracts for the manufacture of shoes had been awarded to the shoe company. Complaints were made of violation of the terms of the Act and the Secretary started an inquiry. Certain places for the manufacture of the shoes had been designated in the contract and the shoe company offered to furnish complete records as to those plants but as to certain other plants refused to comply with the subpoena for the production of records on the ground that the employees of those plants were not covered by the Act or the contract and that the Secretary was without authority to investigate as to wages or hours of labor or in such plants. The court held that whether the employees in the other plants were covered by the terms of the contract was a question for the Secretary to decide and she was entitled to have the subpoena enforced.

In National Labor Relations Board v. Barrett Co., 7 Cir., 120 F.2d 583, 585, we find squarely presented the issue we have here except for the fact, which as above stated I regard as immaterial, that the proceeding was under Section 10(a) instead of 9(c). A complaint had been filed by employees against their employer. The Board began an investigation for the purpose of determining whether interstate commerce was involved and issued a subpoena for certain books and documents to ascertain the source of materials used by the employer and the volume thereof and the destination of the product. Holding that the Board was entitled to an order for the enforcement of the subpoena, the court said:

"The first step is the filing of a charge by the employee. Upon its filing, the Board is required to investigate the complaint. In actual practice, it is first obliged to inquire into the employer's business and determine (tentatively, at least) whether that business is interstate. Not until it is rea-

sonably well settled that the employer's business falls within interstate commerce, is it authorized, or at least justified, in issuing a complaint.

"Its powers and its duties are closely related. Its duty to investigate before it exercises its power to file a complaint seems to us clear. In fact, its exercise of power without investigation may be justifiably questioned and legitimately criticized.

"Certainly few would deny the wisdom of such a course. There may be criticisms which arise out of making the investigator, also, the trier of the fact. But that criticism, whatever its merits, is in no way involved in our inquiry, which is to ascertain whether the Act required the Board, as appellants contend, to act, that is, to issue the complaint, and then investigate the facts— or, as the Government urges, required the Board to investigate the facts set forth in the charge of the employee and issue its complaint only if it finds merit in the charge. In other words, if it appears that reasonable grounds exist for believing the allegation of the employee to be true, and that the employer is engaged in interstate commerce and has been guilty of unfair labor practice condemned by the Act, the Board should act, but not until its investigation established or tended to establish such facts."

■ In my opinion the Board is entitled to an order compelling obedience to the subpoena without first showing that the Bank is engaged in interstate commerce or that its activities affect that commerce. To hold otherwise put upon the court the burden of investigation that it is the purpose of the Act to put upon the Administrative body. If the Board's investigation should show that the Bank is not engaged in commerce, that it is not subject to the provisions of the Act, the Court may assume that the Board will dismiss the petition of the Union. If the Board should find that the Bank's business is of such a character as to make it subject to the Act, it, the Board, can make no order that can be enforced without action by a court, where the rights of respondent Bank will be fully protected.

■ Third: It is argued that the regulation of banks and the conduct of their business is so fully covered by the general banking laws, state and national, that it was not intended by Congress that they should be subject to the National Labor Relations Act. A bank, it is said, is a creature of statute. Its powers and duties are wholly within the control of the state, and its affairs and the conduct of its business are regulated by the statute under which it is organized. Ordinarily, the argument runs, banks are not permitted to enter into future obligations in the conduct of their affairs, such as employment contracts for future years, and the provisions of the Act requiring the employer to bargain in good faith and having done so to embody the agreement with respect to rates of pay and hours of employment in a contract would conceivably impose upon a bank obligations in the form of unduly high rates of wages, the closed shop, seniority restrictions, etc., which would take from the directors the control of the bank and impose burdens inconsistent with the duties and obligations of the bank to the public. The agreement also might automatically impose upon the bank an obligation of indebtedness the amount of which might not be determinable and the discharge of which might render the bank incapable of performing its duties to the state and the public.

The argument does not impress me. Congress has made the Act applicable to all employers who are engaged in interstate commerce and has not excepted banks. Requiring directors of banks to bargain collectively with their employees does not interfere with the conduct of the business of the bank any more than would a voluntary agreement as to wages and hours of employment and certainly it would not be contended that a voluntary agreement with employees as to wages, working conditions and hours of labor would be ultra vires. Any danger of such an agreement imposing a financial obligation that would render the bank incapable of performing its duties to the state and the public seems to me wholly imaginary.

Attention is called to the provisions in both state and federal statutes that banks shall be subject to no visitorial powers other than such as are authorized by law or vested in courts of justice. But the investigation being carried on is authorized by law.

■ It is contended that state banks are creatures of the several states and wholly within the control of the states and not subject to the jurisdiction of the National Labor Relations Board. All corporations of this country (except those created by Act of Congress) are creatures of

the state that created them, but if they engage in business which affects interstate commerce the constitution gives Congress the power to regulate their interstate activities. A bank created by state in so far as its business affects interstate commerce is as much subject to regulation by Congress as any other corporation. The Constitution makes no exceptions nor places any limitations upon the power to regulate commerce between the states, except, of course, the limitations expressed in the Fourth and Fifth Amendments.

Lastly, it is objected that the subpoena is too broad. I cannot say that it is. I can understand that the Bank, if required to produce at one time all the books and papers called for, would be unable to carry on its banking business. The order requiring compliance with the subpoena should provide a convenient method of compliance, one which will not interfere with the business of the bank. I think the order should provide, too, that in so far as the bank will permit inspection of the books and papers at its place of business it need not be required to produce them before the Examiner.