John H. YOURGA, d/b/a John H. Yourga Trucking, Plaintiff,

v.

UNITED STATES of America and the Interstate Commerce Commission, Defendants,

and

The Pennsylvania Railroad Company, a Corporation, et al., Intervenors.

Civ. A. No. 60–480.

United States District Court
W. D. Pennsylvania.

Jan. 25, 1961.

374

Christian Graf, Harrisburg, Pa., for plaintiff.

Arthur J. Cerra, Washington, D. C., for defendants United States and Interstate Commerce Commission.

Donald Brinkworth, Pittsburgh, Pa., for Pennsylvania Railroad.

Richard A. Bishop, Washington, D. C., for Daniels Motor Freight.

John A. Vuono, Pittsburgh, Pa., for all other intervenors.

Before STALEY, Circuit Judge, and MARSH and WILLSON, District Judges.

WILLSON, District Judge.

This civil action was brought pursuant to Title 28 U.S.C.A. §§ 1336, 1398, 2284, 2321, 2322 and 2325. The three-judge court was empanelled to hear and determine the issues by order of Chief Judge Biggs of the Third Judicial Circuit, entered September 19, 1960. In his brief plaintiff's counsel has given us a summary of the proceedings had before the Interstate Commerce Commission which is substantially as follows:

" * * * On or about December 23, 1958, John H. Yourga, d/b/a John H. Yourga Trucking filed an application with the Interstate Commerce Commission, seeking a certificate of public convenience and necessity, authorizing operations in inter-

state commerce as a common carrier by motor vehicle, over irregular routes, of iron and steel articles as described in Groups I, II and III of Appendix IV to the report in Descriptions in Motor Carrier Certificates, 61 M.C.C. 209, 766, from points in Mercer County, Pennsylvania to points in New York and New Jersey, and damaged shipments of the said commodities on return. This application was docketed at M.C. 59266, Sub. No. 7 and referred to Hearing Examiner C. Evans Brooks for hearing.

"Hearing was held at Washington, D. C. on March 3 and 4, 1959, at which time a number of protestants appeared in opposition to the application. On or about June 2, 1959, the Hearing Examiner served his 'Report and Order Recommended by C. Evans Brooks, Hearing Examiner', wherein he recommended denial of the application in its entirety. On or about June 26, 1959 and within the time prescribed by law, Plaintiff herein filed Exceptions to the Examiner's Report and certain of the protestants filed replies thereto.

"On October 19, 1959, the Interstate Commerce Commission, through Division 1, Commissioners Murphy, Webb and Herring, served its 'Report of the Commission', sustaining the Examiner and denying the application of Plaintiff in its entirety.

"On or about November 11, 1959, Plaintiff herein filed a Petition for Reconsideration with the Interstate Commission.

"Subsequent to the filing of applicant's Petition for Reconsideration, Plaintiff's counsel was notified that a certificate of public convenience and necessity, dated November 23, 1959, had been issued to the Youngstown Cartage Co. Analysis of this certificate made it plain that said carrier was not authorized to trans-

port metals and metal products from Sharon, Pennsylvania to points in New York and New Jersey, a result directly contrary to the specific findings of the Examiner and of Division 1.

"Plaintiff's counsel also was informed that Sawhill Tubular Products, Inc. and Sharon Steel Corporation had learned of the Youngstown Cartage Co. certificate, dated November 23, 1960 and had, accordingly, ceased the use of this carrier on or about January 22, 1960.

"Under date of February 8, 1960, Plaintiff herein filed his 'Applicant's Petition for Reopening, for Receipt of Late Filed Exhibits and for Reconsideration'. This Petition attached certain exhibits which were offered in evidence to show the correct authority of the Youngstown Cartage Co.; to show the importance of Youngstown Cartage as a carrier for Sharon Steel Corporation and the tonnages which must be moved and for which Youngstown Cartage Co. is no longer available; to show the efforts made by Sharon Steel Corporation to secure service and the inability of Moore-Flesher Hauling Company to serve; and to show the tonnages moved by Youngstown Cartage Co. for Sawhill Tubular Products, Inc., which tonnage must now be moved and for which Youngstown Cartage Co. is no longer available.

"Certain protestants filed Replies to applicant's Petition for Reconsideration, dated November 11, 1959 and certain protestants filed Answers to applicant's Petition for Reopening for Receipt of Late Filed Exhibits and for Reconsideration, dated February 8, 1960.

"On or about June 15, 1960, the Interstate Commerce Commission issued its order denying both the applicant's petitions. * * * "

We have thought it appropriate to accept plaintiff's review of the proceedings before the commission because plaintiff points to the chronological events, and the date of entry of the orders which form the subject matter of his claim for relief before this court. It is to be noticed that the final order of the commission does not come until June 15, 1960, but the commission, by Division 1, adopted the Examiner's findings on October 9, 1959. The foregoing then is the record upon which this court is to render a decision on whether the commission has given due consideration to plaintiff's cause.

Plaintiff's counsel poses three propositions for decision. He says, (1) the order of the Interstate Commerce Commission dated June 15, 1960 is fatally defective by reason of the lack of findings and conclusions, (2) the Interstate Commerce Commission has failed properly to evaluate the evidence relative to necessity, and (3) the Interstate Commerce Commission has failed properly to evaluate the evidence relative to the inadequacy of the existing service.

In commencing an evaluation of the propositions raised by the plaintiff, several well-known principles must be kept in mind. In the first place, the action of the commission is presumed valid. The commission is alone authorized to decide upon the weight of the evidence and the significance of the facts. There is no requirement that the commission specify the weight to be given to any item of evidence or fact, or disclose the mental operations by which its decisions are reached. Baltimore & O. R. Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209. The court must sustain the commission if its findings are supported by substantial evidence. Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456. We also recognize that unless in some specific regard there has been a prejudicial departure from the requirements, this court is without authority to interfere. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; and particularly on appeal

this court cannot substitute its judgment for that of the commission provided the commission's determination is supported in the record and under applicable law. C. I. R. v. Fisher, 327 U.S. 512, 66 S.Ct. 686, 90 L.Ed. 818.

 Plaintiff's argument in attacking the order of June 15, 1960 proceeds: Plaintiff sharply complains that on November 23, 1959, the commission, by its own order, materially and substantially reduced the quantum of evidence upon which the Examiner's findings were based. As a result, he asserts, that the commission was thereafter required to make new findings and conclusions when the matter was finally disposed of in the June 15th order. The record shows that the Examiner, in considering the evidence before him, and in his findings and conclusions, relied upon Youngstown Cartage Company as being one of the major carriers who was authorized, and did provide a substantial portion of the service to two of the shippers from Mercer County, Pa. to the destination points sought by the plaintiff here. As is indicated above, Division 1 adopted the Examiner's findings. On June 15, 1960, the full commission in denying both of applicant's petitions entered its final order, the pertinent portions of which are as follows:

"* * * Upon consideration of the record in the above entitled proceeding, and of:

"1. Petition of applicant, dated November 11, 1959, for reconsideration;

"2. Petition of applicant, dated February 8, 1960, for reopening of the proceeding to receive in evidence exhibits attached to applicant's petition, and for reconsideration;
* * * *"

Then follow ten references to replies to plaintiff's petition by various protestants. The commission then concludes:

"* * * and good cause appearing therefor:

"It is ordered, That the said petitions be, and they are hereby de-nied, for the reasons that the findings of Division 1 are in accordance with the evidence and the applicable law, and that it does not appear that anything would be gained, or a different result reached, by the reopening of the proceeding for the purpose of receiving in evidence the exhibits attached to applicant's petition, and/or for reconsideration.

"By the Commission * * *"

The nub of plaintiff's grievance on this point is that this final order is deficient in that it does not embrace proper findings and conclusions related to the changed circumstances occurring as a result of Youngstown's withdrawal. Plaintiff concedes however that the commission is not bound after successive attacks upon its findings to make new findings and conclusions, but asserts that in the special circumstances of this case, such findings and conclusions are required. Prior to its final order, the commission had before it, and was to rule on a petition for reconsideration, and a petition for reopening. The former petition raised the substantiality of the evidence before the Examiner and Division 1. The latter related to Youngstown's changed circumstances. We think that an examination of the commission's order indicates that due consideration was given to plaintiff's contention with respect to the so-called "after discovered evidence", which is plaintiff's counsel's characterization of Youngstown's changed circumstances. It is to be noticed in the above quoted final order of the commission, specific reference is made to plaintiff's petition of November 11, 1959 for reconsideration, and February 8, 1960 petition for reopening. That order specifically recites that one of the sought purposes for reopening of the proceeding is to receive in evidence, the exhibits which are attached to applicant's petition for reconsideration, they being numbered exhibits 61 through 64 inclusive. It is upon these exhibits that plaintiff relies for support of his contention that the situation was materially altered with respect to the ability of the

existing carriers to adequately serve the shipper's needs. Yet the order does not rest with the recitation of a consideration of these petitions, but the order specifically states, " * * * it does not appear that *anything would be gained or a different result reached* by the reopening of the proceedings. * * * " (Emphasis supplied.) By this language the commission was incorporating a well-defined body of law relating to newly discovered or after discovered evidence. Initially it is to be borne in mind that a petition for rehearing or reconsideration upon the ground of newly discovered evidence is addressed to the sound discretion of the commission, and reversal of the commission's ruling can only be based upon a clear showing of an abuse of discretion. United States v. Pierce Auto Freight Lines, supra. In order to grant the petition for reconsideration on the ground of newly discovered evidence, it must appear that the evidence was discovered since the hearing; the facts must be such that reasonable diligence on the part of the party seeking rehearing may be inferred; the evidence is material and not merely cumulative or impeaching, and the evidence will probably produce a different result. Dolcin Corporation v. Federal Trade Comm., 1954, 94 U.S.App.D.C. 247, 219 F.2d 742; Reed v. Kellerman, D.C., 2 F. R.D. 195; Price v. Greenway, 3 Cir., 1948, 167 F.2d 196. It is this latter cardinal principal to which the commission was referring in its order. It is not possible for this court to conclude, in view of the language used by the commission, that it failed to examine the exhibits and put its mind to the argument advanced by plaintiff that the withdrawal of Youngstown required a different and new finding as to public necessity and convenience. In making its decision, it is apparent that the commission employed the appropriate standard with respect to evaluating the after discovered evidence; and it is not for this court to substitute its own judgment for that of the commission and say that a different result would be reached on the record before the commission, and upon which the commission had the right to exercise its discretion.

On the point as to the necessity that the commission make specific findings, an opinion of the late Circuit Judge Parker, in Carolina Scenic Coach Lines v. United States, D.C., 59 F.Supp. 336, affirmed per curiam 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398, authoritatively disposes of plaintiff's contention. The order under attack in his case, as in ours, was an order denying a rehearing sought on the grounds of newly discovered evidence. The commission there, as here, permitted the petition to be filed and gave protestants an opportunity to reply thereto. The court held that whether the commission should grant a rehearing in a case which it has decided is a matter resting in its sound discretion, cf. I. C. C. v. Jersey City, 322 U. S. 503, 517, 64 S.Ct. 1129, 88 L.Ed. 1420. The court said:

" * * * The discretion here was exercised, and there is nothing to show that it was abused. * * * "

The several traffic routes and the carrier's authority were discussed and then Judge Parker pointed out:

" * * * all of these were mere evidentiary questions for the consideration of the commission in connection with the ultimate question as to whether public convenience and necessity would be served by granting * * * the franchise * * *. There is nothing before us upon which we would be justified in saying that in denying the rehearing the commission did not give full consideration to all these matters; and, for aught, that appears, its denial of the rehearing may well have been based upon the view that, assuming the matters urged in the petition to be true, they could not affect its decision. To one who has denied many petitions for rehearing and seldom given a reason therefor, *it comes as a matter of mild surprise that anyone should think it incumbent on a court or commission to give reasons*

*for denying a petition merely because a party urges grounds that he claims to have discovered recently. Orders of the commission are presumed to be valid. * * * "* (Emphasis supplied.) Carolina Scenic Coach Lines v. United States, supra [56 F.Supp. 337].

The other two contentions advanced by the plaintiff relate to the merits of the commission's findings and conclusions on the record before it, and specifically, challenge is directed to the commission's evaluation of the evidence on the issue of the public necessity for plaintiff's service, and the inadequacy of existing service. Examination of these contentions necessarily requires consideration of plaintiff's contention that, as a result of the withdrawal of Youngstown, the quantum of evidence in the record has been materially reduced to the point that the commission's findings and conclusions cannot rest on substantial evidence. Before the Examiner, plaintiff had the burden of proof to affirmatively establish by a fair preponderance of the evidence that the public convenience and necessity required authorization of his proposed operations. The issues raised by the plaintiff regarding merits of the commission's decision necessarily involve an application of the "substantial evidence" test as found in Universal Camera, supra. As is indicated above, this court is not to substitute its judgment for that of the commission, and the findings must stand if they are supported by substantial evidence. Plaintiff contends that the commission ignored pertinent evidence, which evidence warranted reversal of the original decision, in effect asserting that the record does not contain substantial evidence to support the commission's findings and conclusions. His assertions on these points must be rejected.

At the outset it is to be noted that the application did not present a complex problem. The Examiner, in his report, meticulously developed the factual circumstances of the case. First, plaintiff's ability with respect to his (1) past, presently authorized, and potential future operations, (2) equipment, (3) physical plant, and (4) financial structure, was set forth. Next, the evidence of each of the five shippers who supported the application were discussed with respect to their (1) amount and type of iron and steel shipped, (2) particular problems attendant to the shipment of their cargo, (3) loading and storage facilities, and (4) experience with existing carriers. Finally, the nature of the service presently available to each shipper was examined by detailing each of the protesting carrier's operations with respect to the (1) authorized items and routes of shipment, (2) nature of equipment available to those shipper's needs, and (3) availability and desire to service those shippers. One damaging item to plaintiff's application was developed on the issue of the inadequacy of existing service in that three of the supporting shippers had failed to make any inquiries whatsoever of several of the authorized carriers serving the destinations they desired, despite the fact that they were dissatisfied with the carrier they were using. It also must be borne in mind that the supporting shipper's complaints pertained exclusively to a period of time of abnormal steel shipments due to the fact that the steel industry at that time was experiencing a period of increased production in anticipation of a strike. The commission, after adopting the Examiner's recommended report, at pages 6 and 7 of its report, again specifically outlined the availability of the authorized service to the points of origin and destination. There is ample evidence in the record to support the commission's findings and conclusions, and this is true despite the withdrawal of Youngstown. It is to be noticed that the Examiner refers to Youngstown as one of the major motor carriers servicing Sharon Steel and Sawhill Tubular Products, Inc., but the commission demonstrated that group of protestants collectively service all the concerned origins and destinations. Plain-

tiff's counsel has made an able and clear presentation of his case, but the facts in the record simply do not warrant setting aside the commission's order or referring the matter back to the commission for rehearing.