NATIONAL LABOR RELATIONS
BOARD, Plaintiffs,

v.

BRITISH AUTO PARTS, INC.,
Defendant.

Civ. A. No. 67–75.

United States District Court
C. D. California.

March 31, 1967.

Daniel J. Harrington, Regional Atty., Milo V. Price, Atty., National Labor Re-lations Board, Region 21, Los Angeles, Cal., for plaintiff.

Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., David A. Maddux, Los Angeles, Cal., appearing, for defendant.

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

IRVING HILL, District Judge.

This cause came on to be heard upon a complaint for an order compelling production of records filed by the plaintiff National Labor Relations Board on January 16, 1967, and upon the issuance of a rule to show cause on that date setting the matter for hearing on February 27. On February 10, 1967, defendant filed an answer and on February 20, defendant filed motions to dismiss the said complaint and for summary judgment. The Board filed no response to defendant's motions; the parties stipulated that the points and authorities filed by the Board in support of the complaint would be deemed its opposition to the said motions and the points and authorities filed by defendant in support of its motions would be deemed its opposition to the complaint.

The matter having been heard on February 27, 1967, the Court, being duly advised in the premises, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff is an administrative agency created by the National Labor Relations Act, referred to hereafter as "the Act" (29 U.S.C. § 151 et seq.), and is empowered and directed to administer the provisions of the Act, including the investigation of questions of employee representation under Section 9 (29 U.S.C. § 159).

2. Defendant is an employer engaged in the importation and wholesale distribution of automobile parts for interstate commerce within the meaning of Sections 2(6) and (7) of the Act (29 U.S. C. §§ 152(6), (7)).

3. Defendant's facility where the employees involved in this proceeding are employed is located at Gardena, California, within this judicial district.

4. On March 17, 1966, a labor organization (General Warehousemen, Local Union No. 598, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America) filed a petition with the Board's Twenty-first Region at Los Angeles, California, asserting its claim to represent defendant's employees, and seeking a representation election to establish its majority support. The petition was docketed as Board Case No. 21–RC–9986.

5. On April 12, 1966, the Regional Director approved a Stipulation for Certification upon Consent Election entered into by the Company and the Union. The stipulation provides, in relevant part, that the Board shall conduct an election in the stipulated unit, and that "[s]aid election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board * * *."

6. One of the Board's election rules in effect at the time the parties entered into the stipulation for a consent election was the rule announced by the Board on February 4, 1966, in its decision in Excelsior Underwear Inc., 156 N.L.R.B. No. 111. Defendant does not challenge the propriety of the Board's method of adoption of the Excelsior rule.

7. Under the Board's *Excelsior* rule an employer is required to file with the Board's Regional Director, in the region where the representation proceeding is pending, a list of the names and addresses of all employees eligible to vote in the representation election within 7 days after the Regional Director's approval of a consent election agreement or after the close of the determinative payroll period for eligibility purposes, whichever is later. The Regional Director is then to make the list available to all parties to the representation proceeding in order to promote the communication of election issues to the employees and to aid in challenging the ballots of employees believed to be ineligible to vote.

8. The Board's *Excelsior* decision further provides that an employer's failure to file the required list of employee names and addresses "shall be grounds for setting aside the election whenever proper objections are filed."

9. On April 19, 1966, defendant filed with the Regional Director an election eligibility list containing the names of its employees, but omitting their addresses, contrary to the *Excelsior* rule.

10. On May 2, 1966, an election was conducted in which 3 employees cast valid ballots for the Union and 4 employees cast valid ballots against. The Board, however, sustained the Union's objection to conduct affecting the results of the election based on defendant's refusal to furnish the *Excelsior* list, set the election aside, and directed a second election (160 N.L.R.B. No. 40).

11. On August 4, 1966, the Regional Director notified defendant that the second election was to be conducted on September 12, 1966, and requested that an election eligibility list of employee names and addresses be filed not later than August 11, 1966, as required by the Board's order and the *Excelsior* rule.

12. Defendant again failed to furnish an election eligibility list containing the addresses of its employees as required by the *Excelsior* rule.

13. Thereafter, the Union notified the Regional Director that it. did not want to proceed to a second election until defendant furnished the required eligibility list, in compliance with the Board's *Excelsior* rule. Accordingly, the Regional Office notified the parties that the second election would be postponed.

14. On September 14, 1966, the Regional Director caused a subpena *duces tecum* to be issued pursuant to Section 11(1) of the Act (29 U.S.C. § 161 (1)), directing defendant to produce and make available to the Board's Regional Office defendant's personnel and payroll records, or an eligibility list in lieu

thereof, containing the names and addresses of all employees eligible to vote in the election.

15. The subpena was served upon the defendant by registered mail on September 15, 1966.

16. On September 20, 1966, defendant filed a petition to revoke the subpena, which was denied by the Board by a formal telegraphic order dated September 22, 1966.

17. On October 3, 1966, the Regional Director caused a second subpena *duces tecum* to be issued pursuant to Section 11(1) of the Act (29 U.S.C. § 161(1)). This subpena was identical to the first subpena described in paragraph 14, supra, save only for the date of return.

18. The second subpena was served upon defendant by registered mail on October 4, 1966.

19. Defendant did not file a petition to revoke the second subpena.

20. Defendant appeared on October 12, 1966, the return date for the second subpena, but failed and refused to produce the materials as therein called for and as required by its terms, and has at all times since failed and refused and continues to fail and refuse to produce the records and documents called for in said subpena.

21. Upon defendant's refusal to comply with the subpena, the Board instituted the instant proceeding seeking, *inter alia,* an order requiring defendant to produce the material called for by the subpena.

## CONCLUSIONS OF LAW

■ 1. The National Labor Relations Board is entitled by virtue of Section 11(2) of the National Labor Relations Act (29 U.S.C. § 161(2)) to enforcement of the subpena *duces tecum* directed to defendant. The subpena was issued by the Board in a properly instituted representation proceeding (Board Case No. 21–RC–9986) and is a valid aid to the Board in its statutorily authorized function of determining the question of representation presented.

■ 2. The material sought to be subpenaed, i. e., defendant's personnel and payroll records, or an eligibility list in lieu thereof containing the names and addresses of employees eligible to vote in the elections, are "evidence" within the meaning of Section 11(1) of the National Labor Relations Act (29 U.S.C. § 161 (1)). The term "evidence" is not limited to formal proof of disputed facts presented in a trial-type hearing. Rather, Section 11(1) permits the Board to subpena records containing information necessary or helpful to carrying out its statutory duties at the investigative, as well as at the hearing stage of its proceedings. Cudahy Packing Co. v. NLRB, 117 F.2d 692, 693 (10th Cir. 1941); NLRB v. Northern Trust Co., 56 F. Supp. 335 (N.D. Ill., 1944), aff'd, 148 F. 2d 24 (7th Cir.), cert. denied, 326 U.S. 731, 66 S.Ct. 38, 90 L.Ed. 435 (1945). The foregoing cases make clear that the Board may subpena as "evidence" an election eligibility list containing employees' names. The Board's *Excelsior* rule, requiring that employees' addresses as well as names be included in the eligibility list, does not alter the nature of the list for subpoena purposes. NLRB v. Wolverine Industries, 64 L.R.R.M. 2187, 2188 (E.D.Mich., 1966). Cf. NLRB v. Groendyke Transport, Inc., 372 F.2d 137 (10th Cir. 1967), where the Court of Appeals for the Tenth Circuit held that the Board may conduct a representation election by mail ballot. Implicit in that decision is the holding that the Board may require an employer to furnish the addresses of its employees for the purpose of conducting a representation election.

■ 3. It is no defense to enforcement of the present subpena that the Board intends to make information revealed by the subpena available to the union involved in the representation proceeding. NLRB v. Friedman, 352 F.2d 545, 547 (3d Cir. 1965). "The control of the election proceeding, and the determination of the steps necessary to conduct that election fairly [are] matters which Congress entrusted to the Board alone." NLRB v. Waterman S. S.

Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704, 715 (1940). See also NLRB v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322, 327 (1946); NLRB v. Shirlington Supermarket, Inc., 244 F.2d 649, 651 (4th Cir. 1955). In discharging that trust, the Board in Excelsior Underwear Inc., 156 N.L.R.B. 1236, determined that one of the factors that tend to impede a "free and reasoned choice" in Board elections "is lack of information with respect to one of the choices available." It was primarily in order to remove the impediment to free choice created by lack of communication that the Board in the *Excelsior* decision promulgated the new election rule which is described supra, in paragraph 7 of the findings of fact. That "all participants in an election should have access to the electorate" (*Excelsior*, 156 N.L.R.B. at 1242, n. 18) is a familiar democratic principle. The Board could reasonably determine that there is no legitimate employer interest which outweights this principle and which would prevent application of this principle to Board representation elections. Moreover, the *Excelsior* rule will aid the Board in conducting representation elections by diminishing the number of voters challenged and the challenge procedures with which the Board must deal. In sum, the rule promulgated in *Excelsior* is a valid and reasonable exercise of the Board's power to regulate the conduct of representation elections.

■■■■ 4. Defendant contends that the *Excelsior* rule is unconstitutional as violative of the employees' rights to free association and privacy. However, it is clear that no such constitutional rights are invaded by the *Excelsior* rule, even assuming that the defendant has standing to raise such constitutional issues on its employees' behalf. NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), cited by defendant, involved the right of the N. A. A. C. P. and its members "to foster beliefs they admittedly have the right to advocate" without fear of exposure of the members' beliefs and associations. The

*Excelsior* list simply sets forth the names and addresses of those employed by defendant; it tells nothing about their beliefs and associations. With respect to the employees' "right to privacy," as the Supreme Court pointed out in Martin v. City of Struthers, 319 U.S. 141, 143–149, 63 S.Ct. 862, 87 L.Ed. 1313, 1317–1320 (1943), those who do not welcome visits to their homes are free to turn the visitors away and will have the protection of the law in doing so. Nor is there any merit to the defendant's contention that the *Excelsior* rule interferes with its employees' Section 7 right to refrain from engaging in collective action. This right does not preclude the Board from making employees' names and addresses available to a labor organization seeking recognition through the elective process. The employees will have an opportunity to exercise their Section 7 rights at the election by voting for or against the labor organization seeking their support.

■■■■ 5. Defendant also contends that it should not be compelled to divulge its employees' addresses because it requires all of its employees to fill out an application form on which there appears a statement that the defendant agrees to keep all information contained in said form confidential. Even assuming this to be a promise of confidentiality which was bargained for by the employees, it is clear that the defendant may nonetheless be compelled to testify as to the addresses contained in the employment forms. It is a basic rule of evidence that the mere fact that a communication is made in confidence does not create a recognized privilege against disclosure. See 8 Wigmore, Evidence § 2286 (3d ed. 1940), and cases there cited. The Court finds no merit in defendant's contention that it is being deprived, without due process, of a contract right to keep the employees' addresses confidential. The Court does not construe the contract as vesting any right of confidentiality in the defendant. Assuming confidentiality of address is the bargained-for contract right of the employees, it is doubtful whether the employer may assert such right in the

employees' behalf. Furthermore, assuming the defendant has standing to champion the employees' contract right to confidentiality, the Court finds the employees' interest in said contract right to be insubstantial and subject to abridgment by a clearly proper administrative rule promulgated for purposes of holding a fair election. See, e. g., Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 228, 20 S.Ct. 96, 44 L.Ed. 136, 142–143 (1899).

■■■■ 6. Defendant's contention that the Board is limited to handling violations of the *Excelsior* rule as unfair labor practices under Section 8 of the Act (29 U.S.C. § 158) is without merit. The question of whether the defendant's refusal to comply with the *Excelsior* rule constitutes an unfair labor practice is not before the Court in this proceeding. Even if such conduct amounts to an unfair labor practice, that fact does not preclude the issuance of the order as prayed; treatment of the conduct as an unfair labor practice would not be the Board's exclusive remedy for failure to furnish the required addresses.

■■■■ 7. Although on April 12, 1966, the defendant entered into a Stipulation for Certification upon Consent Election which provides that the election will be held in accordance with the Board's Rules and Regulations, that stipulation did not constitute a waiver of defendant's right to contest the validity of the *Excelsior* rule by way of defense to the instant action.

■■■■ 8. The defendant is not estopped from challenging the instant subpena on the ground that it failed to petition the Board for its revocation. Such a petition would have been fruitless in view of defendant's having petitioned the Board for revocation of a prior identical subpena and such petition having been denied by the Board.

■■■■ 9. Even if the addresses of the employees are not considered to be "evidence" within the meaning of Section 11(1) of the Act, the Court would issue an injunction directly enforcing the Board's *Excelsior* rule. District Courts have jurisdiction under 28 U.S.C. § 1337, "of all suits and proceedings regulating commerce." This statutory provision vests the district courts with jurisdiction to aid administrative agencies in carrying out their congressionally authorized powers and duties, despite the absence of any express grant of district court jurisdiction under the agencies' respective enabling acts. See Capital Service Inc. v. NLRB, 347 U.S. 501, 504, 74 S.Ct. 699, 702, 98 L.Ed. 887, 891–892 (1954); Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 521–524, 526–527, 75 S.Ct. 452, 458–459, 460–461, 99 L.Ed. 600, 610–612, 613 (1955) (dissenting opinions); NLRB v. Wolverine Industries, 64 L.R.R.M. 2187, 2189 (E.D.Mich., 1966); NLRB v. New York State Labor Board, 106 F. Supp. 749, 752–753 (S.D.N.Y.1952) and cases there cited; Federal Maritime Commission v. Atlantic & Gulf/Panama Canal Zone, 241 F.Supp. 766, 774–775 (S.D.N.Y.1965) and cases there cited. See also Walling v. Brooklyn Braid Co., 152 F.2d 938, 940–941 (2d Cir. 1945).

10. In accordance with the foregoing conclusions of law, defendant is neither entitled to dismissal of the complaint nor to summary judgment in its favor.