**NATIONAL LABOR RELATIONS BOARD, Applicant,**

v.

**DANIEL CONSTRUCTION COMPANY, Inc., Respondent.**

**Civ. A. No. 68–525.**

United States District Court
D. South Carolina,
Greenville Division.

Sept. 3, 1968.

material which standard or standards they have in mind.

2. 42 U.S.C.A. §§ 2000d, 2000d–1 (1964).

**424**

H. Frank Malone, Regional Atty., Jesse L. Butler, Jr., Martin L. Ball, Jr., Winston-Salem, N. C., for applicant.

Thompson, Ogletree & Haynsworth, Robert T. Thompson, Homer L. Deakins, Jr., Greenville, S. C., for respondent.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

In a representation proceeding which has already enjoyed a chequered career through both Board and Court proceedings (See, Daniel Construction Company v. N. L. R. B., 4th Cir. 1965, 341 F.2d 805, cert. denied 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75), the National Labor Relations Board seeks enforcement against the respondent Daniel Construction Company of a subpoena *duces tecum* issued in line with the rule enunciated by the Board in Excelsior Underwear, Inc., 156 N.L.R.B. 1236, requiring the respondent to produce its records showing names and addresses of all persons, now or heretofore employed by it, and entitled to vote in the representation election ordered by the Board for employees of the respondent. If the subpoena is enforced, the Board proposes to make available such names and addresses to the petitioning union for use by such union in its "electioneering" activities preliminary to the election.[1]

Jurisdiction of this action rests on Section 11(2) of the National Labor Relations Act (Section 161(2), 29 U.S.C. A.) and Section 1337, 28 U.S.C.A. N. L. R. B. v. British Auto Parts, Inc. (D.C. Cal. 1967) 266 F.Supp. 368, 372.

Enforcement of this subpoena under normal circumstances would follow N. L. R. B. v. Hanes Hosiery Division-Hanes Corporation (4th Cir. 1967) 384 F.2d 188. To the same effect: N. L. R. B. v. Rohlen (7th Cir. 1967) 385 F.2d 52. Save for the points hereafter specially discussed, this decision in the *Hanes Case* held that the objections raised by the respondent to the enforcement of the subpoena are without merit.

The respondent urges that the so-called *Excelsior Rule*, under whose authority this subpoena was issued, violates the Administrative Procedure Act (5 U.S.C.A. §§ 552–553), and cannot accordingly sustain the issuance of the

1. For a general discussion of the *Excelsior Rule*, see Heinsina, Names, Addresses and the N.L.R.B.: Some Implications of the Excelsior Case, 1 Ga.Law Rev. 646 (1967).

subpoena herein. In support of this contention, the respondent relies on a recent decision of the First Circuit in Wyman-Gordon Co. v. N. L. R. B., 397 F.2d 394, decided June 12, 1968. It is conceded that this objection was not considered in either the *Hanes or Rohlen Cases*. It was, however, raised in another case in this District, involving as here an application for enforcement of a subpoena *duces tecum* under the *Excelsior Rule* and Chief Judge Martin, after full consideration of the *Wyman Gordon Case*, refused to follow it and ordered enforcement. N. L. R. B. v. Cone Mills Corp., CA No. 68–244, filed July 17, 1968. I feel bound by this decision of the Chief Judge of this District. Any other result would create confusing conflict in the decisions of a single Court and would encourage unseemly "judge-shopping" by litigants.

The respondent raises an additional objection. It asserts that, by providing the names and addresses of all its employees, present or past, entitled to vote in the representation election, it makes such persons available for personal contact and electioneering by the union seeking representation via the election, whereas, by express provision of the National Labor Relations Act, it is denied that right of personal contact and electioneering with those former employees whom the Board has held entitled to vote in the representation election, thereby creating a substantial inequality of electioneering opportunity between union and employer. The respondent contends that the Board in the *Excelsior Case* recognized the strength of this argument and sought to answer it and justify its rule by holding that such rule did not destroy that equality, since the employer still could do what the union would be able to do by talking to its employees in its own plant or yard. Thus, the Board said (156 N.L.R.B., 1246, note 27):

"In the briefs and arguments of the Employers and *amici curiae* supporting the Employers, much has been made of Board decisions setting aside representation elections because an employer or his agents called on all or a majority of employees in their homes in the period preceding the election. See, e. g., Peoria Plastic Company, 117 NLRB 545. The argument is made that it would be inequitable for the Board to preclude employers from visiting employees in their homes and at the same time insist that unions be furnished with employee names and addresses so that they may engage in home visits. The short answer to this argument is that employers are free to communicate with their employees in the plant; a union, as a practical matter, is severely limited in its efforts at inplant communications. See Plant City Welding and Tank Company, 119 NLRB 131, 133–134; * * *."

In short, the respondent's argument amounts to the contention that the *Excelsior Rule* as normally applied gave the union the right of personal access to the employee, a right which the employer already had at its own plant in its contacts with its employees. The Rule thus gave substantial equality of rights to employer and union,[2] and this was the basic purpose of the Rule.[3]

In this case, however, the respondent argues that the reasoning on which the Board justified its *Excelsior Rule* does not prevail. Two-thirds or more of

2. See, also, N.L.R.B. v. British Auto Parts, Inc., *supra*, where the Court explained the Board's decision as expressive of the "familiar democratic" principle "That 'all participants in an election should have access to the electorate.'" (p. 373, 266 F.Supp.)

3. In its opinion the Board justifies its rule with the statement that "we may properly require employer disclosure of employee names and addresses so as to *insure* the opportunity of all employees to be reached by all parties in the period immediately preceding a representation election." Page 1245, 156 NLRB. This language indicates that the thrust of the Board's rule is for equal opportunity of access to the employees "by all parties" to the election.

the persons found by the Board entitled to vote in this representation election are no longer employed by the respondent. These persons are not available to the respondent on its locations, and, the respondent has no right of personal access to them. By upholding this subpoena, however, the union will obtain the names and addresses of these former employees and will be able to "electioneer" them personally. This argument is persuasive. However, the present situation itself, if maintained, does not place the parties in a position of substantial equality in electioneering, as the opinion in the *Excelsior Case* made clear. The employer can communicate by mail with these former employees and put before them its position. Without the names and addresses of such former employees, the union, on the other hand, is unable in most instances to communicate either by mail or in person with such former employees.

We are accordingly faced with this dilemma: If enforcement of the subpoena is denied, the respondent which knows the names and has the addresses of these former employees will enjoy an advantage over the union since the respondent can, as a result of such knowledge, communicate by mail with these former employees, a right the union, by reason of its want of knowledge, cannot exercise. On the other hand, if the subpoena is enforced as required by the Board, the union will acquire the right to know the names and addresses of all such former employees and the right to communicate directly (as distinguished from by mail) [4] with such employees, a right specifically denied the respondent. Enforcement of the subpoena without limitation will thus create substantial imbalance in electioneering in favor of the union. Such result would run counter to the purposes of the *Excelsior Rule* as it was enunciated by the Board and to the reasoning in the Court's opinion in the *Hanes Case* sustaining the Rule.[5]

While it is true that responsibility for the development of procedures to insure the fairness of representative elections is entrusted to the Board[6] does the Court have no responsibility or power, to assure that a subpoena it authorizes will not create arbitrarily the very imbalance the Board itself was seeking to eliminate in promulgating its *Excelsior Rule*? In exercising its jurisdiction under Section 161(2), the Court does not act automatically; it does have certain discretion; it does have authority to see that its order of enforcement does not operate capriciously or arbitrarily, creating an unfair and unreasonable advantage in favor of one party to a controversy or election.[7]

---

4. The right to communicate by mail cannot be equated with the right of personal access in the exercise of the right to "electioneer" the employees. This the Board itself concluded in the *Excelsior Case*. In holding that the union should not be confined to the use of the mails in its efforts to communicate with the employees to vote in the election, the Board cited its opinion in S & H Grossinger's, Inc., 156 NLRB 233. See note 27, page 1246, 156 NLRB. In the *Grossinger Case*, the Board said that "it is clear that dissemination of literature—although an important campaign method, particularly for counteracting employer antiunion literature—is hardly the equivalent, and certainly not a feasible substitute for, oral solicitation and discussion in which the organizers can systematically present and argue the union viewpoint." 156 NLRB, at page 257.

5. In summarizing its conclusions, the Court in the *Hanes Case*, said (p. 191, 384 F.2d): "In sum, we think fairness in the elective process demands here, as it does in public or corporate elections, the opportunity of contesting parties to communicate their respective positions to the electorate."

6. NLRB v. Waterman S.S. Co., (1940) 309 U.S. 206, 226, 60 S.Ct. 493, 84 L. Ed. 704, reh. den. 309 U.S. 696, 60 S. Ct. 611, 84 L.Ed. 1036; NLRB v. Shirlington Supermarket (4th Cir. 1955) 224 F.2d 649, 651, cert. den. 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801; NLRB v. Hanes Corp., *supra*, 384 F.2d at p. 951.

7. The rule stated in Jackson Packing Co. v. NLRB (5th Cir. 1953) 204 F.2d 842, 844, reaffirming the ruling in NLRB v. Anchor Rome Mills, Inc. (5th Cir. 1952) 197 F.2d 447, is that "whenever it is

■ To enforce the subpoena as applied for by the Board under the particular and special circumstances of this case would arbitrarily create an inequality as to the rights of the two parties to the election. On the other hand, to refuse enforcement entirely would be to give the employer the unfair advantage that the *Excelsior Rule* sought to overcome. In this situation and because of the unique and unusual facts of this case, I feel that the subpoena should be enforced on this specific condition, i. e., the respondent shall only supply such names and addresses to the petitioning union with the express restriction that the union shall communicate solely by mail with those employees who have not been on the payroll of the respondent within thirty days of this Order. As to all other employees, the right of the access by the union to the employees will not be restricted or limited by this Order.

And it is so ordered.

Goodyear Tire & Rubber Co. v. NLRB (6th Cir. 1941) 122 F.2d 450, 453, 136 A.L.R. 883; NLRB v. United Aircraft Corporation (D.C.Conn.1961) 200 F. Supp. 48, 50, aff. 300 F.2d 442 (2nd Cir.)

made to appear to the court that a subpoena is too broadly or oppressively drawn or there are reasons to believe that it will be enforced capriciously or oppressively, it is the duty of the court to prevent abuse of its process." See, also,