Marcos A. GODINEZ, Plaintiff,

v.

L. Wesley JONES and Kiko Toro, Inc.,
Defendants.

Civ. No. 175-59.

United States District Court
D. Puerto Rico,
San Juan Division.

Dec. 23, 1959.

Harvey Nachman, San Juan, P. R., for plaintiff.

Francisco A. Arrillaga, Santurce, P. R., for defendants.

RUIZ-NAZARIO, District Judge.

This action is now before the Court on the motion to dismiss filed by the defendant L. Wesley Jones.

The motion is predicated on the alleged lack of jurisdiction of this court, because

A. There is no diversity of citizenship between the plaintiff Marcos A. Godinez and the two parties defendant, as required by Title 28 U.S.C.A. § 1332, in connection with a tort action like the one involved herein; and

B. This action does not arise under the constitution, laws or treaties of the United States, as further alleged in the complaint herein, so as to enable this court to take jurisdiction thereof under Title 28 U.S.C.A. § 1331.

A hearing on said motion was held on September 14, 1958, and plaintiff Marcos A. Godinez gave testimony in support of the allegation contained in paragraph First of his complaint in the sense that "at all times hereinafter mentioned the plaintiff was and is a citizen and resident of the United States of America and the State of Virginia, stationed temporarily with the United States Naval Forces in the Commonwealth of Puerto Rico".

Argument was heard and the questions raised by the motion were submitted on memoranda to be filed, simultaneously, ten days thereafter.

The memoranda have been duly filed, the court has given ample consideration to them and to the law applicable on the subject, and is now duly advised in the premises.

I.

Diversity.

The burden of showing that his residence is in the State of Virginia, i. e. outside of the Commonwealth of Puerto Rico where the two defendants reside, rests on the plaintiff.

To discharge this burden plaintiff only offered his own testimony.

From this, it conclusively appears that he was born in the Commonwealth of Puerto Rico in 1909 and that he has resided here since his said birth, except for the time that he was pursuing his college and medical education at Georgetown University in Washington, D. C.,

and his periods of service in the U. S. Navy from 1943 until 1946, and from 1948 until 1958. In May 1948 he was transferred to the United States Naval Station at San Juan, Puerto Rico, where he has remained until the present time. His tour of duty with the Navy will expire in April 1960.

Plaintiff concedes that enlistment in one of the services of the Armed Forces of the United States does not destroy a domicile of origin, and that a serviceman does not in general acquire a new domicile in a state in which he may be stationed.

With regard to his alleged new domicile in the State of Virginia, his testimony is to the effect that he was physically present in said State, while serving in the Navy and not otherwise, in 1943 (at Camp Bradford, in the city of Norfolk) and from 1951 to 1955 (at Quantico) both times living in Naval Quarters within the Naval Bases.

It does not appear from his testimony that he has ever been physically present or has had any personal abode, outside his service connected activities, in any specific town or city in the State of Virginia, since he entered the Navy in 1942 and up to the present time.

His only ground for contending that he is domiciled in Virginia is that in 1948, upon returning to regular Navy duty and leaving Puerto Rico to serve in Washington, D. C. he had the intention never to return to Puerto Rico; that while stationed a Quantico, Virginia, from 1951 to 1955 he and his wife decided to make Virginia their permanent abode; that while in Virginia he purchased an automobile and signed a formal declaration with the Commissioner of Motor Vehicles of the Commonwealth of Virginia (as required by the laws of said State) in the sense that he intended to make his permanent home in Virginia; that thereafter he has been receiving annually his motor vehicle license from Virginia; that he maintains a mailing address in Virginia, care of Mr. and Mrs. Bruce Walker, 1 Pine Lane, Woodbridge, Virginia, and that his automobile is now registered in Virginia; that the Virginia area is appealing to him and his wife; that they have many friends there; that he will be able to practice medicine there, it being a short distance from Washington, D. C. where it will be easy for him to establish hospital connections with his Alma Mater, Georgetown University; that there are many retired Navy and Marine Officers in the neighborhood and that the countryside is particularly adaptable to his avocation as a horseman.

Evidently plaintiff has failed to prove the existence of the basic contacts required by law to support a finding that he *has* established his residence or domicile in any specific place in the Commonwealth of Virginia and much less to show that he has lawfully changed his Puerto Rican domicile for a domicile at any place in Virginia.

The law on the subject is very aptly stated in Restatement of the Law—Conflict of Laws Sec. 15 p. 32, as follows:

"Sec..15—Domicil of Choice.

"(1) A domicil of choice is a domicil acquired, through the exercise of his own will, by a person who is legally capable of changing his domicil.

"(2) To acquire a domicil of choice, a person *must establish a dwelling-place* with the intention of making it his home.

"(3) *The fact of physical presence at a dwelling place* and the intention *to make it a home must concur*; if they do so, even for a moment, the change of domicil takes place.

"(4) A person can acquire a domicil of choice only in one of three ways:

"(a) having no home, *he acquires a home* in a place other than his former domicil;

"(b) having a home in one place, he gives it up as such *and acquires a new home in another place;*

"(c) (Not applicable here)". (Emphasis supplied.)

█ In connection with the above see: State of Texas v. Florida, 306 U.S. 398, at page 424, 59 S.Ct. 563, 83 L.Ed. 817, from which we quote:

"*Residence in fact*, coupled with the purpose to make *the place of residence* one's home, are the essential elements of domicile." (Cases cited.) (Emphasis supplied.)

"While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply *the fact of residence there;*" (cases cited). 306 U.S. at page 425, 59 S.Ct. at page 576.

█ In Sun Printing & Publishing Ass'n v. Edwards, 194 U.S. 377, at page 383, 24 S.Ct. 696, 698, 48 L.Ed. 1027, the court said:

"Now, it is elementary that, to effect a change of one's legal domicil, *two things are indispensable: First* residence in a new domicil; and, second, the intention to remain there. The change cannot be made, except facto et animo. *Both are alike necessary.* Either without the other is insufficient". (Emphasis supplied.)

Plaintiff's evidence here has wholly failed to prove one of the above stated indispensable elements; the de facto one, and even if plaintiff's testimony as to his and his wife's intentions were lawfully sufficient to establish the other element (which the court does not find lawfully sufficient to establish) his alleged domicile or residence in Virginia has not been shown, and the Court must, therefore, find, as it does hereby find and conclude, that plaintiff has not lost or changed his Puerto Rican domicile, and that no diversity of citizenship between him and the defendants has been shown to exist or does in fact exist.

Ellis v. Southeast Construction Co. 8 Cir., 260 F.2d 280, cited by plaintiff, is distinguishable from the case at bar. There the plaintiff, at the time of the filing of the complaint was living in a rented apartment with his family in Shreveport, Louisiana, though he was then serving in the Armed Forces at Barksdale Field in said City. He was stationed there by choice and as the result of considerable effort on his part to be transferred to that point. Since 1941 he had been corresponding, on occasions, with the United States Senators for Arkansas and one Congressman, seeking to be transferred to that point, which transfer materialized in 1956. He later purchased a $15,500 house there. He had invested substantial amounts of money in preparing himself for eleven different aeronautical ratings and to obtain commercial pilot's, mechanic's, ground instructor's and flight instructor's licenses to secure a position with the Civilian Airport in Shreveport, in contemplation of the fact that shortly thereafter he would be entitled to retirement from the Armed Forces. His wife's father lived near Shreveport and on account of his physical condition it would be of great mental relief to plaintiff and his wife to continue living in Shreveport. The evidence there also showed other basic factors amply supporting the conclusion that plaintiff had abandoned his Arkansas domicile and acquired a new domicile in Louisiana.

The factual situation thus proved in said case is at odds with that shown here. Godinez has failed to prove here the basic factors which were established there or even a semblance of those.

Therefore, that case is of no application here.

## II.

### Federal Question.

It is alleged in Par. 11 of the complaint that the defendants violated the Motorboat Act of 1940 and more particularly Title 46 U.S.C.A., Sections 526a, 526c, 526l, 526m, 526o and 526p; and in Par. 12th thereof that the plaintiff was a member of the class intended to be protected by the enactment of the Motorboat Act of 1940 and as such may maintain a cause of action for injuries or damages caused by the violation of

said statute and also may maintain an action caused by the violation of the Federal Boating Program of 1958 (46 U.S. C.A. § 527 et seq.). In Par. 13th it is alleged that the defendants violated the Federal Boating Program of 1958 with resultant damages to the plaintiff.

And it is finally alleged in Par. 14th of the complaint that this Court also has jurisdiction over the subject matter of this action pursuant to Title 28 U.S. C.A. § 1331, by virtue of the fact that the matter in controversy exceeds the sum of $10,000 and arises under the laws of the United States of America.

The Motorboat Act of 1940 (Title 46 U.S.C.A. §§ 526a, 526c, 526*l*, 526m, 526o and 526p) and the Federal Boating Program of 1958 (46 U.S.C.A. §§ 527 to 527h) are mere regulatory statutes which provide certain penalties for the violation of some of their provisions, but which in no way provide for a federal cause of action in favor of any party aggrieved as a result of such violations.

They merely provide certain standards to be complied with by those who operate certain types of motor boats and the penal sanctions to be imposed on such operators for violating the same.

In this respect, said statutes are analogous to the Safety Appliance Acts, 45 U.S.C.A. § 1 et seq.

In support of his proposition that said statutes confer a right of action for damages in his favor, plaintiff mainly relies in Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874. But the Supreme Court in its later case of Tipton v. Atchinson, T. & S. F. Ry. Co., 298 U.S. 141, 56 S.Ct. 715, 80 L.Ed. 1091, explained the scope of its decision in the former case as follows:

> "In Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874, it was decided that, as the first Safety Appliance Act had been extended by later legislation to equipment used in intrastate transportation upon a railroad which is a highway of interstate commerce, an employe injured as the result of a violation of the act, in respect of a car so used, is entitled to recover for breach of the duty imposed on the carrier. *Nothing more was there adjudicated.* While the opinion discussed the power of Congress, in connection with such regulation of the instrumentalities of interstate commerce, not only to enlarge the common law duty of the employer and thus alter substantive rights of the employe, but also to afford a correlative remedy, the construction put upon the Safety Appliance Acts was that *they remit the person injured to such remedy as the state law affords.*" (298 U.S. at page 147, 56 S.Ct. at page 717. Emphasis supplied.)

Texas & Pacific Ry. Co. v. Rigsby, supra, does not therefore support plaintiff's said contention.

Other cases from the Circuit Courts of Appeal for the Second, Fifth and Ninth Circuits and from the District Court of the Northern District of Illinois, as well as from the English and New Zealand Reports are also cited by plaintiff in support of said proposition.

No matter how enlightening the last above mentioned decisions may be, this court is bound to follow the holdings of the Court of Appeals for this First Circuit on the subject.

In Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 206 F.2d 153, the said court decided that the Safety Appliance Acts, 45 U.S.C.A. § 1 et seq., which, as above stated, is a regulatory statute, covering the operation of railroads and providing certain penalties for the violation of its provisions, of the same character as the regulatory statutes covering certain types of boats invoked herein by plaintiff, "confer no right of action for damages in favor of any individual suffering personal injuries as a result of violation of the various safety provisions." At page 155.

The above case was affirmed per curiam in 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067.

See also Turner v. Wilson Line of Massachusetts, 1 Cir., 242 F.2d 414.

In Mozingo v. Consolidated Construction Company, 171 F.Supp. 396, the District Court for the Eastern District of Virginia, Norfolk Division, the above two cases from the First Circuit were cited in support of a similar holding in connection with the Air Commerce Act of 1926, 49 U.S.C.A. § 171 et seq.

Finally, the latest pronouncement of the Supreme Court against pretended expansions of the jurisdiction of the federal courts, such as the one claimed here by plaintiff, is very aptly expressed in Justice Frankfurter's opinion in Romero v. International Terminal Operating Co. 358 U.S. 354, 379, 79 S.Ct. 468, 484, 3 L. Ed.2d 368, as follows:

"The considerations of history and policy which investigation has illuminated are powerfully reinforced by the deeply felt and traditional reluctance of this Court to expand the jurisdiction of the federal courts through a broad reading of jurisdictional statutes."

▮ It is plaintiff's last contention that the Motorboat Act of 1940 (46 U.S. C.A. §§ 526 to 526t) is an Act of Congress regulating commerce, falling within the provisions of Title 28 U.S.C.A. § 1337, which grants original jurisdiction to the district courts "of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

Plaintiff's position in this respect is untenable. The statute invoked by him (the Motorboat Act of 1940, 46 U.S.C.A. §§ 526 to 526t) cannot, by any stretch of the imagination, be considered as an "Act of Congress regulating commerce" falling within the provisions of Title 28 U.S.C.A. § 1337.

Plaintiff has been unable to cite any case in which regulatory statutes providing for penalties only and not giving any right of action at law, such as the Safety Appliance Acts, Air Commerce Act of 1926, or the Motorboat Act of 1940, have been construed by any court as "Acts of Congress regulating commerce".

This Court would indulge in the unjustified expansion of its jurisdiction criticized in the above quotation from Romero v. International Terminal Operating Co., supra, if it were to hold that the Motorboat Act of 1940 is an Act of Congress regulating commerce falling within the provisions of Title 28 U.S.C.A. § 1337.

It would be presumptuous of this Court to so hold.

Therefore, the Court must, as it does hereby conclude, that the complaint also fails to show that this Court has jurisdiction of the subject matter of this action, either under Section 1331 or Section 1337 of Title 28 U.S.C.A.

The motion to dismiss must be accordingly granted and this action should be ordered dismissed.

It is so Ordered.