**Charles Elliott RUTLEDGE**

v.

**CITY OF SHREVEPORT.**

**Civ. A. No. 18062.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

Jan. 17, 1975.

Robert G. Pugh, Sydney B. Nelson, Pugh & Nelson, Shreveport, La., for plaintiff.

John Gallagher, Roland J. Achee, Ray A. Barlow, Neil Dixon, Shreveport, La., for defendant.

## OPINION

STAGG, District Judge.

In this action, complainant, Charles Elliott Rutledge, is seeking equitable re-

lief requiring defendant to pay back pay, due since the date of his alleged wrongful dismissal; reinstatement to his former job as a police officer; and a declaratory judgment providing that defendant cannot automatically terminate complainant's employment merely because he exercises certain rights afforded him by the Constitution and the laws of the United States relating to bankruptcy. Jurisdiction of this Court over the matter arises by virtue of 28 U.S.C. § 1331, as the matter in controversy exceeds the sum of $10,000 exclusive of interest and costs and arises under the Constitution and laws of the United States.

## FINDINGS OF FACT

The factual background of this suit is not seriously disputed. Complainant was employed by the City of Shreveport in June, 1970 as a police patrolman. In the intervening months following his employment as a policeman, Rutledge and his wife encountered various medical and marital problems which resulted in the incurrence of substantial debts which Rutledge could not thereafter pay. As a result, on March 20, 1972, Rutledge filed a petition in bankruptcy and in due course received a discharge from his excessive debts. On April 5, 1972, due to the filing of the voluntary bankruptcy petition, complainant was discharged as a police patrolman by the Commissioner of Public Safety of the City of Shreveport. The discharge was reviewed at complainant's request by the Municipal Fire and Police Civil Service Board for the City of Shreveport. The Board affirmed the action of the appointing authority and, in so doing, specifically found that Rule 25 of the Rules and Regulations for the Shreveport Police Department was a reasonable rule and was reasonably applied in this instance. Rule 25 reads as follows:

"ANY MEMBER OF THE DEPARTMENT FOUND GUILTY OF VIOLATING ANY OF THE FOLLOWING RULES OR REGULATIONS WILL BE SUBJECT TO

REPRIMAND, SUSPENSION, DEMOTION OR DISMISSAL.

25. Neglecting to pay a just indebtedness incurred while in the service within a reasonable time, resulting in bankruptcy or garnishment of wages."

The Board further found that complainant "did file for Bankruptcy under the Federal Bankruptcy Laws and that the sole reason for his termination was this fact."

Having exhausted his administrative remedies, Charles Rutledge brought this action for back pay and reinstatement as well as for a declaratory judgment.

## CONCLUSIONS OF LAW

Complainant herein launches a dual attack on Rule 25 of the Rules and Regulations for members of the Shreveport Police Department. Initially, it is asserted that said rule is in conflict with the intent and purpose of the National Bankruptcy Act and thus is invalid under the Supremacy Clause of the United States Constitution.

Secondly, petitioner contends that Rule 25 does violence to the Due Process Clause of the Fourteenth Amendment of the United States Constitution in that, although the purpose of the rule is legitimate, the means chosen to achieve that end are arbitrary and capricious. Pursuing this second contention, complainant admits that the purpose of Rule 25 is to prevent police officers from becoming excessively indebted whereby they may become prone to accept various gratuities and not vigorously to enforce the law. However, he contends—and this Court agrees—that Rule 25 does not achieve the purpose of *preventing* excessive debt, but rather *locks in* the evil which the rule intended to alleviate as the rule does not prohibit or hinder a policeman from *incurring* excessive debt but rather prevents the policeman from *discharging* his excessive debt burden by filing a voluntary petition in bankruptcy. Therefore, the policeman is left with the excessive debts and continues,

for that reason, to be prone to accept bribes and other gratuities, whereas if the policeman could have his debts discharged in bankruptcy, then the temptations mentioned above would be removed.

Notwithstanding this Court's opinions as to the purpose and effect of Rule 25 from a due process standpoint, this Court finds itself in agreement with complainant's Supremacy Clause attack and thus finds it unnecessary to pass upon the Due Process argument.

## SUPREMACY CLAUSE

In an attempt to justify the rule, defendant contends that Rule 25 has a legitimate, twofold rationale. First, as stated above, it is felt that excessive indebtedness places police officers in a dangerous position as to temptations in their duties. Specifically, it is urged by defendant that policemen, by the very nature of their work, are susceptible to unusual pressures and opportunities for compromise. Following this reasoning, defendant contends that if policemen know that they cannot obtain a discharge of their indebtedness via bankruptcy without also being discharged from their jobs, then policemen will not incur excessive debts and thus will not be as vulnerable to temptation.

The second rationale for the rule lies in the area of public relations. This reason has for its hypothesis the belief that the public image of police officers is an essential ingredient to effective law enforcement. From this, it is argued that permitting policemen to incur excessive debt and then have this debt discharged in bankruptcy is destructive of that public image and thus has a deleterious effect on the public image of the police force in general.

Basing its position on these two justifications, defendant argues that the purpose of Rule 25 is not to circumvent the Bankruptcy Act but rather its purpose is to insure a reliable, respected police force. Furthermore, defendant relies on the cases of Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941) and

Kesler v. Department of Public Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962), two early opinions of the Supreme Court dealing with alleged conflicts between the Bankruptcy Act and state financial responsibility laws, to substantiate its position that Rule 25 does not constitute such a conflict with the Bankruptcy Act as would render the rule invalid under the Supremacy Clause. In line with the decisions in *Reitz* and *Kesler*, supra, defendant would have this Court look to the purpose of Rule 25, rather than its effect, and to declare that since its purpose is not to frustrate the Bankruptcy Act then it does not conflict with the Bankruptcy Act.

However persuasive this argument may have been in the past, it is clear that it has since been rejected and the theory overruled in the more recent Supreme Court decision of Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

■ In *Perez*, the Court enunciated a two-step process by which to decide whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause. The Court must first ascertain the construction of the two statutes, and then proceed to determine whether they are in conflict.

Neither party has brought to this Court's attention, nor has its own research revealed, any Louisiana state court construction of Rule 25, therefore the Court must accept the defendant's contention that the purpose of the rule is to insure a reliable and respected police force.

As to the construction of the Bankruptcy Act, the *Perez* Court stated:

"Turning to the federal statute, the construction of the Bankruptcy Act is similarly clear. This Court on numerous occasions has stated that '[o]ne of the primary purposes of the Bankruptcy Act' is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the

pressure and discouragement of preexisting debt'." (Citations omitted.) 91 S.Ct. 1704 at 1710–1711.

As the construction of both Rule 25 and the Bankruptcy Act has been established the Court must now proceed to the constitutional question whether an administrative rule which seeks to achieve a reliable and respected police force is in conflict with a federal statute which gives debtors an opportunity for a new start in life, free from the burden of excessive debts. *Perez*, supra. The guidelines to be followed in making such a determination were succinctly stated by Mr. Justice Black more than 30 years ago:

> " * * * 'In the final analysis', our function is to determine whether a challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'." *Perez*, supra, at 1711, quoting from Justice Black's opinion in Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

█ In upholding the financial responsibility laws in both *Reitz* and *Kesler,* supra, the Court looked to the purpose of the state legislation and upheld the enactments because the purpose was not to circumvent the Bankruptcy Act. However, the Justices dissenting in these two cases concerned themselves with the *effect* of the state legislation upon rights granted by federal statutes. Concerning themselves with the *effect* of Arizona's Motor Vehicle Safety Responsibility Act upon rights granted by the National Bankruptcy Act, a majority of the Supreme Court in *Perez* stated:

> "[3, 4] We can no longer adhere to the aberrational doctrine of *Kesler* and *Reitz* that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine

would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law. In view of the consequences, we certainly would not apply the *Kesler* doctrine in all Supremacy Clause cases. Although it is possible to argue that *Kesler* and *Reitz* are somehow confined to cases involving either bankruptcy or highway safety, analysis discloses no reason why the States should have broader power to nullify federal law in these fields than in others. Thus, we conclude that *Kesler* and *Reitz* can have no authoritative effect to the extent they are inconsistent with the controlling principle that any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." 91 S.Ct. 1704, 1712.

Thus, it is now clear that in considering a Supremacy Clause attack, the purpose of a state enactment *as well as its effect on federal law* must be determined.

In the case at bar, the purpose of Rule 25 is not to circumvent the Bankruptcy Act but to insure a reliable and respectable police force. However, the effect of Rule 25 is to prohibit a policeman burdened with staggering debts from obtaining "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez*, supra, at 1710–1711. Therefore, the effect of Rule 25 is in direct contravention of the stated purpose of the Bankruptcy Act.

Finally, counsel for plaintiff directs our attention to the case of In re Hicks wherein the District Court of New York, in a case similar to the case sub judice, granted an injunction against the City of Syracuse, enjoining it from dismissing a member of its fire department solely because he sought to have his debts discharged in bankruptcy. In its

opinion granting the injunction the Court stated:

" * * * Whether this be regarded as a proceeding to collect or compel payment of the bill owing by Hicks to P. Caulfield & Son, or a proceeding to punish him for not paying it, or a proceeding to punish him for taking advantage of the provisions of the national bankruptcy act, or a proceeding to punish or discipline Hicks for a violation of the ordinance of the city of Syracuse, in that he has failed to pay such debt owing by him, and is seeking to be discharged from its payment without full payment, the fact stands out plainly that an attempt is being made to remove Hicks from his office or position in the fire department of the city of Syracuse, under the provisions of the ordinance in question, because he seeks to avail himself of the provisions of the national bankruptcy act; because he is doing what he lawfully may do—doing an act that in no way pertains to the proper discharge of his duties as a fireman, and which cannot legally be said to affect his character or standing as a citizen or as a fireman, for the reason the act is one the paramount law of the land says he may do, and one the city of Syracuse cannot say he shall not do, or suffer for in any way if he does it. This being true, the proceeding against Hicks, in any view, becomes the infliction of a penalty or of a punishment, or the attempt to inflict a penalty or punishment, for the nonpayment of a debt dischargeable in bankruptcy. This federal law says that if Hicks surrenders all his property, and commits no offense against the act, he shall be discharged from any obligation to pay this indebtedness. The ordinance of the city of Syracuse and the regulations of the fire department above quoted say that, if he fails or neglects to pay this debt in full, charges may be preferred against him for its nonpayment, and, on proof that he has not paid, he may be dismissed from his office or position in the fire department. Here is a plain conflict between the provisions of the national bankruptcy act and the ordinance of the city of Syracuse, and the rules and regulations of its fire department, above quoted. There can be no question which constitutes the paramount law of the land. Both cannot stand together. The ordinance and rules and regulations must yield. Proceedings against Hicks for his removal from the fire department must be stayed." 133 F. 739, 744–745 (1905).

In this respect, I find myself in agreement with Judge Ray. Therefore, Rule 25 must yield to the expressed intent and purpose of the Federal Bankruptcy Act.

Also, from a common sense view of Rule 25, this ruling seems just and proper. The testimony of the Commissioner of Public Safety was to the effect that if an employee takes bankruptcy he is dismissed. These questions suggest themselves: If the child of a police officer develops leukemia, or if his wife has cancer and mountainous medical expenses are incurred, what are his options? If he takes bankruptcy, he loses his job and loses his pension and/or retirement benefits. Is he not faced with the temptation of "going on the take" to try to get the money for his debts in order to prevent the necessity of bankruptcy and thereby to maintain his job, his pension and retirement benefits? Thus, in addition to frustrating the purpose and intent of Congress in passing the Bankruptcy Act, the rule fails one of its stated purposes.

■ For the foregoing reasons, this Court finds that Rule 25 of the Rules and Regulations of the Shreveport Police Department is unconstitutional in that it conflicts with federal law and thus under the Supremacy Clause of the United States Constitution the local rule must yield to the federal enactment. Furthermore, it is hereby ordered that defendant reinstate complainant to his former position as a police patrolman and pay to him such wages as he would have

earned since his termination on April 5, 1972.[1]

The foregoing shall constitute this Court's findings of fact and conclusions of law. The plaintiff is hereby ordered to submit to this Court a judgment, approved as to form by the defendant, and consistent with the foregoing.

Costs of this litigation are to be borne by defendant, City of Shreveport, Louisiana.

1. Such wages are to be reduced to the extent that Charles Elliott Rutledge has mitigated his damages by gainful employment between the date of his dismissal and this opinion.