**Melvin A. MARSHALL, Appellant,**

v.

**DISTRICT OF COLUMBIA GOVERN-MENT et al. (three cases).**

**Nos. 75–1651, 75–1900 and 75–1901.**

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Argument May 13, 1976.

Decided April 26, 1977.

Rehearing Denied May 23, 1977.

Melvin Marshall, pro se, was on the brief for appellant.

C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Richard W. Barton and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellee.

Before TAMM and MacKINNON, Circuit Judges, and KAUFMAN,* United States District Judge for the District of Maryland.

Opinion for the court PER CURIAM.

Opinion filed by FRANK A. KAUFMAN, District Judge, concurring in part and dissenting in part.

PER CURIAM:

Plaintiff-appellant applied for employment with the District of Columbia police force in May of 1973. His application was denied because he had previously been adjudged bankrupt. On June 28, 1973, he brought his complaint seeking employment notwithstanding such rule. While that case was pending, the District of Columbia modified its regulation barring the hiring of bankrupts to one that permitted the hiring authority to take the incidents of particular bankruptcies into consideration in evaluat-

ing the applicant's suitability for employment. Plaintiff was eventually hired on September 30, 1974, as a probationary employee. However, his probationary employment was subsequently terminated because of his refusal to comply with grooming regulations as promulgated in General Order 1102.3. Those regulations required all police officers to trim their beards and haircuts according to established standards.

The present appeal arises from plaintiff's suit against the District of Columbia (1) for his discharge, and (2) for the delay in his hiring due to the bankruptcy regulation. The complaint alleged that both of these harms were motivated by racial prejudice. The District Court, however, found no evidence of racial discrimination, and proceeded to analyze the complaint in its specific charges. This ruling was correct on the facts and is hereby sustained.[1]

On April 11, 1975, the District Court granted the defendant-District's motion for summary judgment on the counts dealing with the hair regulations.[2] The need for uniform regulations to insure an officer's own safety and that of the community he serves was deemed to supersede plaintiff's claimed interest in religious expression.[3] The regulations were not found to be arbitrary or capricious. The denial of appellant's complaints that the grooming regulations violated his freedom of religion, and were arbitrary and capricious, is hereby affirmed on the basis of the District Court's opinion, reported at 392 F.Supp. 1012 (D.D. C.1975).

We also find that the hair regulation was rationally connected to "the effective functioning of the [Police] department" and to the specific objectives that the District of Columbia sought to achieve by its choice of organization, dress and equipment for its policemen. The grooming requirements are directly related to discipline, uniformity and

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. Petitioner's reliance on 42 U.S.C. § 2000e et seq. (1970 & Supp. V 1975) is therefore vitiated.

2. *Marshall v. District of Columbia*, 392 F.Supp. 1012 (D.D.C.1975).

3. 392 F.Supp. 1012, 1015–16.

to *ésprit de corps.* Prior to such regulation "relaxed grooming standards had resulted in the deterioration of the appearance of [police] officers" (affidavit of then Assistant Police Chief, Maurice Cullinane). All these standards composed the method of organizing its police force that the government of the District of Columbia has selected as part of its objective to promote the safety of persons and property and in doing so appellant's constitutional rights under the fourteenth amendment were not violated.[4]

In paragraph six of his amended complaint appellant also alleged that the District's employment guideline denying police force positions to those who had been adjudged bankrupt denied him his right to "due process and equal protection of the laws," and violated the supremacy clause. Appellant invoked 28 U.S.C. § 1331(a) as his jurisdictional base.[5] On August 6, 1975, defendant's motion for summary judgment as to the "bankruptcy" count was granted, on the ground that the jurisdictional requirement of $10,000 amount in controversy had, to a legal certainty, been shown to be absent. This order of the District Court is sustained for the failure of appellant to satisfy the jurisdictional requirement of $10,000 in controversy.[6]

As the complaint alleged a right under the bankruptcy laws to be free from any negative employment implications resulting from his having gone through bankruptcy, it might be argued that he stated a cause of action under 28 U.S.C. § 1337.[7] No jurisdictional amount is required under 28 U.S.C. § 1337. However, it has never been held that the reference in section 1337 to an "Act of Congress regulating commerce" encompassed the bankruptcy laws. Those laws have their own jurisdictional statute in 28 U.S.C. § 1334. And the bankruptcy laws find independent constitutional authorization. U.S.Const. art. I, § 8, cl. 4.[8] Authority for their enactment is not derived from the commerce power, to which section 1337 alludes.[9]

---

**4.** *Kelly v. Johnson,* 425 U.S. 238, 245–247, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976).

**5.** "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a) (1970).

**6.** The District Court characterized appellant's supremacy clause argument as raising a significant issue in light of *Rutledge v. City of Shreveport,* 387 F.Supp. 1277 (W.D.La.1975). We express no opinion on that characterization, or upon the correctness of the *Rutledge* decision.

**7.** "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337 (1970).

**8.** "The Congress shall have Power . . . [t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . .."

**9.** *Murphy v. Colonial Fed. Sav. & Loan Ass'n,* 388 F.2d 609, 614 (2d Cir. 1967). *See also Hodgson v. Housing Authority of Kansas City,* 71 CCH Lab. Cas. ¶ 32,887 (W.D.Mo.1973)

(basing § 1337 jurisdiction for civil suit under the Truth-in-Lending Act on the commerce clause *rather than* the bankruptcy clause).

The dissenting opinion suggests that the bankruptcy statutes trace a "significant" source of their constitutional authority to the commerce clause, and that this is all that is required by § 1337. We must disagree. With an explicit grant of constitutional authority in the bankruptcy clause, there was no need to invoke the commerce clause as well. Further § 1337 refers to an "Act of Congress *regulating* commerce" (emphasis added), not merely tangentially (or even significantly) *related to* commerce. Appellant's asserted right arises from an ephemeral notice of the *personal* guarantees of the bankruptcy statute which he does not even attempt to assert arises under any statute "regulating commerce." The dissent's view would effectively extend § 1337 jurisdiction to all claims involving federal statutes, since it is difficult not to find a commerce relation *somewhere* in everything Congress does.

With a single exception, the cases cited by the dissent to support § 1337 jurisdiction all involve statutes clearly based on the Commerce Clause or whose authority cannot be premised on any constitutional provision more specific than the commerce clause. *See Finnerty v. Cowen,* 508 F.2d 979 (2d Cir. 1974) (Railroad Retirement Act); *Davis v. Romney,* 490 F.2d 1360 (3d Cir. 1974) (National Housing Act); *Burns v. American Nat'l Bank & Trust*

The connection becomes even more tenuous in light of the fact that petitioner's claim is not one recognized under a specific provision of the bankruptcy law, but instead seeks the protection of a generalized national policy assumed to underlie the bankruptcy laws themselves. In claimed reliance on *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), appellant argues that the bankruptcy statute, in impliedly affording him a "new opportunity in life," prohibits defendant from using his bankruptcy against him in any way in the future. That argument reads too much into the Act.[10] The bankruptcy statute gives a bankrupt "a new opportunity in life and a clear field for future effort unhampered by the pressure and discouragement of preexisting debt"[11] but it does not wipe out the *fact* of a prior bankruptcy. Nor

does it prohibit employers from using the *fact* of bankruptcy in considering whether the past record of a job applicant merits his consideration for employment.

The *fact* that one has been unable to successfully manage his financial affairs in the past might well be considered a sufficient deficiency in his qualifications to justify a refusal to employ him as a police officer. Police officers, because of the nature of their work, are frequent targets of bribery attempts. The District of Columbia might well desire, to the maximum extent possible, to insulate its law enforcement from such corrupt endeavors by refusing to employ officers who, because they were unable to successfully manage their financial affairs in the past might be unable to do so while they were police officers and thus be

*Co.,* 479 F.2d 26 (8th Cir. 1973), *Partain v. First Nat'l Bank,* 467 F.2d 167 (5th Cir. 1972), *Cupo v. Community Nat'l Bank & Trust Co.,* 438 F.2d 108 (2d Cir. 1971) (National Banking Act); *Murphy v. Colonial Fed. Sav. & Loan Ass'n,* 388 F.2d 609 (2d Cir. 1967) (Home Owners' Loan Act of 1933); *Imm v. Union R.R.,* 289 F.2d 858 (3d Cir. 1961) (Federal Employers Liability Act); *Moreno v. U.S. Dep't of Agric.,* 345 F.Supp. 310 (D.D.C.1972) (Food Stamp Act of 1964); *Marquez v. Hardin,* 339 F.Supp. 1364 (N.D.Cal.1969) (National School Lunch Act); and *Ballard v. Moore-McCormack Lines, Inc.,* 285 F.Supp. 290 (S.D.N.Y.1968) (Jones Act). The Jones Act, involving maritime regulation, looks to the commerce clause for the congressional authority to legislate in the field; the presence of a specific admiralty clause is in Art. III, extending judicial, not legislative, power. The "necessary and proper" and "general welfare" clause on which some of these cases also rely do not provide an independent source for legislation in the same sense that Art. I, § 8, cl. 4, does: "The Congress shall have Power . . . [t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . ."

The one exception referred to above is *Quon v. Stans,* 309 F.Supp. 604 (N.D.Cal.1970). Plaintiffs there opposed a method of census-taking which required literacy on the part of respondents. The district court expressed "the opinion that jurisdiction of this action lies under 28 U.S.C. § 1337 . . . . Cf. *N.L.R.B. v. British Auto Parts, Inc.,* 266 F.Supp. 368, 374 (C.D.Cal.1967), aff'd, 405 F.2d 1182 (9th Cir. 1968)." 309 F.Supp. at 606.

The one authority cited, *British Auto Parts,* involved the jurisdiction of the NLRB to issue subpoenas for employee names and addresses. That citation is inapposite because the National

Labor Relations Act is clearly bottomed on the commerce clause, and also because the Ninth Circuit affirmed on other grounds, holding:

> [I]t is not necessary to consider whether jurisdiction to enforce the subpoenas involved would also coordinately or alternatively exist under the provisions of 28 U.S.C.A. § 1337 of the Judicial Code, conferring upon the district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce * * * ". We accordingly do not reach that question and so of course intend no intimation of any nature upon it.

*British Auto Parts, Inc. v. NLRB,* 405 F.2d 1182, 1184 (9th Cir. 1968).

Hence, even by way of analogy, there is no authority for construing the bankruptcy laws as "acts whose constitutional basis is the commerce clause," *Imm v. Union R.R.,* 289 F.2d at 860 (quoting Professor Charles Bunn), or whose basis is even "in any significant way" to be found in the commerce clause. And that is viewing the § 1337 language in its broadest sense, as the dissent would advocate; far less could it be argued that the penumbral rights appellant asserts arise under a statute *regulating* commerce.

**10.** Petitioner's reliance on *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) is further misplaced, as that case involved an attempt by the state to *revivify* one of the very debts for which a bankrupt had been discharged. And jurisdictional amount was not at issue in *Perez.*

**11.** *Perez v. Campbell,* 402 U.S. at 648, 91 S.Ct. at 1710.

more susceptible to bribery than other applicants who had demonstrated such capability. If there were anything to appellant's argument then, by analogy, a person's past criminal record could not be used in considering his suitability for employment because he had been discharged on parole and presumably "given a new opportunity in life." But neither statute wipes out the past.

All a discharge in bankruptcy does is to discharge "pre-existing debt." It does not expunge the fact of bankruptcy. Hence, even if the Bankruptcy Act were grounded in the commerce clause, petitioner's claim does not constitute an "action arising under" that statute.

Finally, we must take judicial notice of the fact that long after June, 1974, when this action was commenced, Congress amended 28 U.S.C. § 1331(a) on October 21, 1976, by Public Law No. 94–574, 90 Stat. 2721, to qualify the $10,000 requirement as follows:

> except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

Public Law No. 94–574, as discerned from its amendment of 28 U.S.C. § 1391(e) and 5 U.S.C. §§ 702, 703, was concerned with suits against the federal government.

We remand to the District Court on the question whether, in the absence of an explicit statement in the Act, the lowered jurisdictional amount should be retroactive, and whether the District of Columbia can be construed to be an "agency" of the United States for purposes of the amended 28 U.S.C. § 1331(a). Even if both of these questions were resolved in appellant's favor, however, he might still not benefit from the change. The last day on which appellant alleged to suffer harm to his purported rights relative to the Bankruptcy Act was September 30, 1974, when he was eventually hired. Suits against the District of Columbia are subject to a six-month notice requirement. D.C.Code § 12–309 (1973).

■ That statute could be interpreted as a statute of limitations, meaning that Marshall could not now bring his lawsuit, nor could he have brought it on the date the jurisdictional amount of § 1331 was changed—October 21, 1976. If, however, D.C.Code § 12–309 is merely a notice requirement, then the filing of the lawsuit in June of 1973, even though without jurisdiction, constituted notice within the necessary six-month period. Even then, it is for the District Court to determine in the first instance whether a refiling is necessary or whether, following the dictum in *Weinberger v. Wiesenfeld,* 420 U.S. 636, 642, n. 10, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), such a step could be avoided as a needless gesture.

The case is remanded for the District Court to consider the questions indicated.

*Judgment accordingly.*

FRANK A. KAUFMAN, District Judge, concurring in part and dissenting in part:

The record in this case supports the District Court's conclusion that plaintiff has not established that his discharge in connection with the grooming regulations of the District of Columbia Police Force violated any of plaintiff's due process, equal protection, or other federal constitutional rights. Accordingly, I concur in the majority's affirmance of the District Court's grant of summary judgment as to plaintiff's claims in those regards. I also concur in the majority's remand with regard to the question of whether jurisdiction is present concerning the bankruptcy issue under 28 U.S.C. § 1331(a), as amended. However, I am unable to concur with the majority's disposition of the section 1337 jurisdictional question.

That additional claim by plaintiff is for back pay from the date of his original application in May 1973 for employment with the police force until the date he was hired, September 30, 1974. Plaintiff alleges that he was denied employment during that period only because of the police force's then existing flat rule against the hiring of persons who had previously been adjudged

bankrupt. Plaintiff had been so adjudged prior to May 1973. Plaintiff contends that that rule was invalid under the Supremacy Clause of the Constitution[1] because it conflicted with those provisions of the federal Bankruptcy Act which are designed to give to debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971), quoting from *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).[2] In *Rutledge v. City of Shreveport,* 387 F.Supp. 1277 (W.D.La. 1975), in which the matter in controversy involved in excess of $10,000 and in which jurisdiction thus existed pursuant to 28 U.S.C. § 1331(a), the Court held invalid a police department regulation which rendered subject to dismissal a policeman who had filed a petition in bankruptcy. In *Rutledge,* the District Court seemingly accepted as valid the same substantive contentions that are advanced as to the bankruptcy issue herein by plaintiff. That issue has been, correctly in my opinion, characterized as a "significant" one by the Court below (slip op. Aug. 6, 1975 at 6). Further, the District Court held that jurisdiction under 28 U.S.C. § 1331(a) is not present with regard to that issue because the $10,000 jurisdictional amount requirement of section 1331(a) is not met. That 1331(a) determination as to the jurisdictional amount is supported by the record. Nevertheless, there remains the question of whether jurisdiction pursuant to 28 U.S.C. § 1337, which has no jurisdictional amount requirement, exists.[3] If section 1337 jurisdiction exists, the remand order should require the District Court to reach the merits of the bankruptcy issue, regardless of whether the recent amendment to section 1331(a) confers jurisdiction as to that question.

## I

Section 1337 provides:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

There is seemingly no specific law on the issue of whether section 1337 jurisdiction extends to bankruptcy issues. *See,* however, *Hodgson v. Hamilton Municipal Court,* 349 F.Supp. 1125 (S.D.Ohio 1972), in which injunctive relief was sought against enforcement of Ohio's statutory garnishment provisions on the grounds that they were in conflict with the federal Consumer Credit Protection Act. That latter act rests on both the bankruptcy and commerce provi-

---

1. The Supremacy Clause, art. VI, cl. 2 of the Constitution, provides:

   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

   Whether or not the District of Columbia is a "State" within the meaning of this Clause, the District is in any event bound by congressional enactments, since whatever power the District possesses has been delegated to it by Congress. *See* U.S.Const. art. I, § 8, cl. 17. There is no reason to believe that Congress desired the bankruptcy laws to be less supreme in the District than in the several states.

2. Neither the Supreme Court's opinion nor the Ninth Circuit's opinion (421 F.2d 619) in *Perez* discloses the jurisdictional basis of the suit.

3. No claim of section 1337 jurisdiction has been made by plaintiff. That in itself would not seem fatal, particularly since the record discloses that plaintiff from time to time proceeded herein *pro se* and at other times was rather clearly in conflict with his counsel. *See Hales v. Winn-Dixie Stores, Inc.,* 500 F.2d 836, 848 (4th Cir. 1974). In addition, plaintiff has specifically raised the Supremacy Clause issue.

   The existence of federal question jurisdiction bases, which do not include any jurisdictional amount requirement, is discussed by Mr. Justice Stewart in *Lynch v. Household Finance Corp.,* 405 U.S. 538, 549–50 n.18, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) and by Judge Friendly in *Murphy v. Colonial Federal Savings and Loan Ass'n,* 388 F.2d 609, 614–15 n.8 (2d Cir. 1967). *See also* C. Wright, Handbook of the Law of Federal Courts 108–10 (1970).

sions of the Constitution. Section 1337 jurisdiction was held to be present.

Article I, § 8, cl. 4 of the Constitution asserts that "[t]he Congress shall have Power * * * To establish an uniform Rule * * * on the subject of Bankruptcies throughout the United States." 28 U.S.C. § 1334 provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, *of all matters and proceedings in bankruptcy.* [Emphasis added.]

*See* the discussion in 13 Wright, Miller & Cooper, Federal Practice & Procedure § 3570 (1975),[4] as to jurisdiction conferred by section 1334 and by section 2 of the Bankruptcy Act (11 U.S.C. § 11 (1970)). The within case is not one *in* bankruptcy. But whether jurisdiction herein as to plaintiff's back pay-bankruptcy rule claim is or is not present pursuant to section 1334 does not foreclose the existence of jurisdiction pursuant to section 1337. Nor is section 1337 jurisdiction barred simply because (1) the constitutional basis of the Bankruptcy Act rests primarily upon the bankruptcy power set forth in art. I, § 8, cl. 4 of the Constitution and (2) section 1337 jurisdiction, which refers to "commerce", rests primarily upon the commerce power set forth in art. I, § 8, cl. 3 of the Constitution.

Section 1337 jurisdiction has been described as "[o]ne of the most important particular grants of federal question jurisdiction." It has also been steadily expanding.

[A] statute comes within Section 1337 if the commerce power is involved in any significant way as the basis for the statute. " * * * [T]o found jurisdiction upon § 1337, it is not requisite that the commerce clause be the exclusive source of Federal power; it suffices that it be a significant one." [Footnote omitted.]

Wright and Miller § 3574 at 503, 505. (The last-quoted words are Judge Friendly's in *Murphy v. Colonial Federal Savings and Loan Ass'n*, 388 F.2d 609, 615 (2d Cir. 1967).) *See also Imm v. Union Pacific R.R. Co.*, 289 F.2d 858, 860 (3d Cir. 1961), and Judge Goodrich's discussion therein of the views of Professor Charles Bunn.

There are of course acts of the Congress which are not the result, in whole or in part, of any exercise of power granted by the commerce clause. Such acts do not come within the purview of section 1337. Wright and Miller § 3574 at 505–06. Thus, for example, the Social Security Act, 42 U.S.C. § 301, *et seq.*, passed as an exercise of the taxing power,[5] has been held not to be an act regulating commerce within the meaning of section 1337. *Aguayo v. Richardson*, 473 F.2d 1090, 1101 (2d Cir. 1973); *Almenares v. Wyman*, 453 F.2d 1075, 1082 n.9 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972). In *Hancock Financial Corp. v. Federal Savings and Loan Ins. Corp.*, 492 F.2d 1325 (9th Cir. 1974), the act which created the Federal Savings and Loan Insurance Corporation was likewise held not to be such an act. It is to be noted, however, that that latter legislation explicitly limited federal jurisdiction.[6] On the other hand, the Railroad

4. Referred to hereinafter as Wright and Miller.

5. Art. I, § 8, cl. 1 of the federal Constitution provides:

The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States * * *.

6. In *Hancock*, the principal stockholder of a state chartered savings and loan association, insured under that federal act, brought suit in federal court to enjoin the sale of the association's assets by its receiver. Judge Goodwin, after remarking that "[e]ach of Hancock's asserted theories of federal jurisdiction", of which section 1337 was one, "has some general

and superficial attraction" (at 1327), quoted the following words from the proviso of 12 U.S.C. § 1730(k)(1):

* * * *Provided* That any action * * to which the Corporation is a party in its capacity as * * * receiver * * * of an insured State-chartered institution and which involves only the rights * * * of * * * stockholders * * * under State law shall not be deemed to arise under the laws of the United States * * *.

With specific reference to section 1337, Judge Goodwin wrote (at 1328) that the statutory duty imposed upon the Federal Savings and Loan Insurance Corporation to liquidate the assets of the association in an orderly way did not bring section 1337 into play because the

Retirement Act, which rests on both the commerce and general welfare clauses, has been held to support section 1337 jurisdiction. *Finnerty v. Cowen,* 508 F.2d 979 (2d Cir. 1974). Therein, Judge Feinberg noted (at 983) that "a significant constitutional source of * * * the * * * Act is the commerce clause" and, distinguishing *Aguayo* and *Almenares,* that "the constitutional basis of the Social Security Act is not the commerce clause, but rather the general welfare clause."

In *Wallace v. City of Rock Island,* 303 F.2d 637, 639 (7th Cir. 1962), a bondholder sought to compel the defendant to return a sum of money to a sinking fund. The Seventh Circuit concluded that the federal law authorizing construction of a particular bridge over the Mississippi River "involves regulation of commerce in so insignificant a sense as not to meet the jurisdictional requirements of Section 1337." Additionally, Judge Knoch noted (at 639) that "Congress has given no right to private persons, as distinguished from the United States and its appropriate agencies, to seek federal court aid * * *."

In *Godinez v. Jones,* 179 F.Supp. 135, 140 (D.P.R.1959), the Motorboat Act was held not an act regulating commerce within sec-tion 1337. The Court, in so holding, suggested that "regulatory statutes providing for penalties only and not giving any right of action at law" are not acts within the purview of section 1337. That view is seemingly questioned in Wright and Miller § 3574 at 506 n.18.

Other than *Wallace* and *Godinez,* no cases suggest that congressional enactments which arguably have significant connections with the exercise by the Congress of its powers under the commerce clause do not support section 1337 jurisdiction. Further, as indicated *supra,* the commerce clause does not have to be the sole, nor even the dominant, constitutional basis, so long as it is a significant one, in order for section 1337 jurisdiction to be present. *See Murphy, supra,* as to the Home Owners' Loan Act of 1933, as amended;[7] *Davis v. Romney,* 490 F.2d 1360, 1365–66 (3d Cir. 1974), as to the National Housing Act;[8] *Ballard v. Moore-McCormack Lines, Inc.,* 285 F.Supp. 290, 295–96 (S.D.N.Y.1968) as to the Jones Act;[9] *Quon v. Stans,* 309 F.Supp. 604, 606 (N.D. Cal.1970), as to the decennial census despite the explicit grant of congressional power in art. I, § 2, cl. 3 of the Constitution; *Moreno v. United States Department of Agriculture,* 345 F.Supp. 310, 313 (D.D.C.

---

statutory provision imposing such duty "does not raise a question of federal law sufficient to take this case out of the exclusionary provision" quoted in part *supra* in this footnote. Judge Goodwin added: "Likewise, we now hold that" that section of the statute creating such duty "is not an 'Act of Congress regulating commerce' within the meaning of § 1337 * * *."

**7.** *Accord, Goldman v. First Federal Savings & Loan Ass'n of Wilmette,* 518 F.2d 1247, 1250 n.6 (7th Cir. 1975) (Stevens, J.); *Milberg v. Lawrence Cedarhurst Federal Savings and Loan Ass'n,* 496 F.2d 523, 525 (2d Cir. 1974); *Kupiec v. Republic Federal Savings & Loan Ass'n,* 384 F.Supp. 1008, 1010 (N.D.Ill.1974) *rev'd on other grounds,* 512 F.2d 147 (7th Cir. 1975). *Contra, Mamber v. Second Federal Savings & Loan Ass'n of Boston,* 275 F.Supp. 170, 171 (D.Mass.1967). *See generally United States v. Kay,* 89 F.2d 19, 21 (2d Cir. 1937).

**8.** *Accord, Bloodworth v. Oxford Village Townhouses, Inc.,* 377 F.Supp. 709, 714–15 (N.D.Ga. 1974); *Mandina v. Lynn,* 357 F.Supp. 269, 276–77 (W.D.Mo.1973). *Contra, Potrero Hill Com-munity Action Committee v. Housing Authority,* 410 F.2d 974, 978–79 (9th Cir. 1969), which Chief Judge Seitz, citing *Imm v. Union Pacific R.R. Co., supra,* declined to follow in *Davis v. Romney, supra.*

**9.** The Jones Act rests, *inter alia,* upon the admiralty provision in art. III, § 2 of the Constitution, which provides, in pertinent part: "The judicial Power shall extend * * * to all Cases of admiralty and maritime Jurisdiction * * *." 28 U.S.C. § 1333 provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.

In *Moore-McCormack,* section 1337 jurisdiction was held to be present despite those constitutional and statutory admiralty provisions.

1972) (McGowan, J.), as to the Food Stamp Act of 1964; [10] *Marquez v. Hardin*, 339 F.Supp. 1364, 1371 (N.D.Cal.1969), as to the National School Lunch Act; and, as to the National Banking Act, 12 U.S.C. § 21 *et seq.*, *Burns v. American National Bank & Trust Company*, 479 F.2d 26 (8th Cir. 1973); [11] *Partain v. First National Bank of Montgomery*, 467 F.2d 167 (5th Cir. 1972); *Cupo v. Community National Bank & Trust Company of New York*, 438 F.2d 108 (2d Cir. 1971). In those latter three cases the fact that 28 U.S.C. § 1348 [12] provides federal jurisdiction as to certain national bank proceedings was held not to bar section 1337 jurisdiction. Nor does the fact that banking legislation, and federal regulation of finance in general, rest upon powers of Congress to lay and collect taxes; to borrow money; to coin money, regulate its value and the value of foreign coin, and to fix the standards of weights and measures; to make all laws necessary and proper for carrying into execution the foregoing powers, as well as upon the power to regulate commerce, [13] affect the existence of section 1337 jurisdiction.

In *Burns v. American National Bank & Trust Company, supra*, the majority of the Eighth Circuit looked to section 1348 to determine if Congress had intended that section to be an exclusive jurisdictional grant and found to the contrary. Similarly, there is nothing in section 1334 to suggest that it was intended to be an exclusive jurisdictional grant. Section 1334 has been interpreted to grant federal court jurisdiction as to certain proceedings, but to leave jurisdiction over other proceedings to the state courts. Wright and Miller § 3570. Moreover, because the claim of plaintiff is not one recognized under a specific provision of the bankruptcy law, but instead is asserted under a basic national policy alleged to underlie the bankruptcy laws, it would appear to make particularly appropriate the exercise of section 1337 jurisdiction in this case. [14]

## II

I join the majority (*see* n.6 of majority opinion) in expressing no view as to the correctness of the holding in *Rutledge*. I also join the majority in concluding that a remand is required in connection with the issues posed by the 1976 amendment to 28 U.S.C. § 1331(a). Additionally, because I hold the view that section 1337 jurisdiction is present, I would, whether or not section 1331(a) jurisdiction is present remand to the Court below the Supremacy Clause issue as to the bankruptcy matter for determination on the merits. Accordingly, as to that issue, I respectfully dissent.

---

**10.** *Accord, Bennett v. Butz*, 386 F.Supp. 1059, 1063 (D.Minn.1974); *Giguere v. Affleck*, 370 F.Supp. 154, 156–57 (D.R.I.1974); *Stewart v. Butz*, 356 F.Supp. 1345, 1347 (W.D.Ky.1973).

**11.** The *Burns* opinion has been criticized in "Expanding Concepts of Federal Jurisdiction Over National Banks," 59 Iowa L.Rev. 1030 (1974), which article is itself, however, criticized in Wright and Miller § 3571 at 478 n.18.

**12.** 28 U.S.C. § 1348 provides:

The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the

Currency, or any receiver acting under his direction, as provided by such chapter.

All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

**13.** *Norman v. B. & O. R.R.*, 294 U.S. 240, 303 (1935), quoted in *Murphy v. Colonial Federal Savings and Loan Ass'n, supra* at 615. *See also Burns, supra* at 29 and *Partain, supra* at 172.

**14.** In 1911, when sections 1334 and 1337 were both enacted, the reach of the commerce clause was far less extended than it is today. In that connection, it is well to note that the added scope given the commerce clause and section 1337 may have rendered certain specific jurisdictional grants, referred to *supra*, superfluous. But that does not negate section 1337 jurisdiction.